NO. 3:09-CV-1082-N
_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION
_____

**CHONG ANN KIM,**

*Appellant,*

**v.**

**ODES HO KIM,**

*Appellee,*

**-and-**

**DOME ENTERTAINMENT CENTER, INC.,**

*Intervenor, Appellee.*
_____

**In re:**

**ODES HO KIM,**

*Debtor.*
_____

Appeal from the United States Bankruptcy Court
for the Northern District of Texas
*Honorable Harlin D. Hale, presiding*
Bankruptcy Case No. 07-36293-HDH-11; Adversary Proceeding 08-03440
_____

### BRIEF OF APPELLANT, CHONG ANN KIM
_____

Charles L. Perry
State Bar No. 15799900
Monica S. Blacker
State Bar No. 00796534
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4400
Facsimile:   (214) 659-4401

ATTORNEYS IN CHARGE FOR APPELLANT,
CHONG ANN KIM

# C<span>ERTIFICATE OF</span> I<span>NTERESTED</span> P<span>ERSONS</span>

Chong Ann Kim, Appellant

      Charles L. Perry (Counsel for Appellant)
      Monica S. Blacker
      ANDREWS KURTH LLP
      1717 Main Street, Suite 3700
      Dallas, Texas  75201

Odes Ho Kim, Debtor in Possession, Appellee

      Gerrit M. Pronske (Counsel for Debtor/Appellee)
      Rakhee V. Patel
      Christina W. Stephenson
      PRONSKE & PATEL, P.C.
      1700 Pacific Avenue, Suite 2260
      Dallas, Texas  75201

Dome Entertainment Center, Inc., Intervener, Appellee.

      Howard Marc Spector (Counsel for Intervener/Appellee)
      Nathan M. Johnson
      HOWARD MARC SPECTOR, P.C.
      12770 Coit Rd., Suite 1100
      Dallas, Texas  75251

# TABLE OF CONTENTS

Certificate of Interested Persons ........................................................................................... i

Table of Contents ................................................................................................................... ii

   I.    Index of Authorities ...................................................................................... iv

Record References .............................................................................................................. vii

Statement of Jurisdiction ................................................................................................... viii

Issue Presented .................................................................................................................. viii

Statement of the Case ........................................................................................................ ix

   II.   Introduction ................................................................................................... 1

   III.   Statement of the Facts ................................................................................. 1

     A.  Background Facts ................................................................................. 1

     B.  Proceedings and Decision Below ......................................................... 3

   IV.   Summary of the Argument .......................................................................... 4

   V.  Standard of Review ...................................................................................... 5

   VI.   Argument ..................................................................................................... 5

     A.  Texas law provides Mrs. Kim with a vested property interest in her homestead which she cannot lose based on the debts of her spouse ............................................. 6

     B.  The Bankruptcy Code does not abrogate the homestead rights of a debtor's spouse. ................................................................................................................ 7

       1.   Nothing in the Bankruptcy Code requires the impairment of the homestead rights of a non-debtor spouse. ................................................................ 8

2. The Court should embrace the reasoning of In re Walsh................................ 10

3. The Bankruptcy Court's holding was influenced by a faulty interpretation of the facts.................................................................................................................. 15

C. Even if bankruptcy law allowed for the sale of Mrs. Kim's homestead, she would be entitled to compensation for her life interest in the homestead. ................ 16

D. The *In re Rogers* decision does not support the Bankruptcy Court's holding. .. 18

VII. Conclusion ......................................................................................................... 20

Certificate Of Service ......................................................................................................... 22

Certificate Of Compliance................................................................................................. 23

<u>INDEX OF AUTHORITIES</u>

## CASES

*In re Allen*,
  725 F.2d 290, 292 (5th Cir. 1984) ..................................................................12

*In re Bippert*,
  311 B.R. 456 (Bankr. W.D. Tex. 2004) .........................................................14

*Bradley v. Pacific Southwest Bank (In re Bradley)*,
  960 F.2d 502 (5th Cir. 1992) ..........................................................................8

*Butner v. United States*,
  440 U.S. 48 (1979)................................................................................8, 9, 16

*In re Cannady*,
  653 F.2d 210 (5th Cir. 1981) .........................................................................12

*Cocke v. Conquest*,
  35 S.W.2d 673 (1931)......................................................................................8

*In re Cole*,
  205 B.R. 382, 384 (Bankr. E.D. Tex. 1997)....................................................8

*In re Davis*,
  170 F.3d 475 (5th Cir. 1999) ............................................................12, 13, 14

*Farrey v. Sanderfoot*,
  500 U.S. 291, 111 S. Ct. 1825 (1991) .............................................................8

*In re Gallo*,
  49 B.R. 28 (Bankr. N.D. Tex. 1985) ..............................................................14

*Heggen v. Pemelton*,
  836 S.W.2d 145 (Tex. 1992) ...........................................................................6

*In re McCombs*,
  No. 06-35891, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. Dec.
  17, 2007) .......................................................................................11, 12, 13, 14

*In re McLain*,
  516 F.3d 301 (5th Cir. 2008) ........................................................................5

*Painewebber Inc. v. Murray*,
  250 B.R. 813 (E.D. Tex. 2001)......................................................................8

*In re Persky*,
  134 B.R. 81 (Bankr. E.D. N.Y. 1991) .........................................................15

*Reid v. Richardson*,
  304 F.2d 351 (4th Cir. 1962) ........................................................................8

*United States v. Rodgers*,
  461 U.S. 677 (1983) ....................................... 6, 7, 11, 13, 14, 16, 17, 19, 20

*Wallace v. Rogers (In re Rogers)*,
  513 F.3d 212 (5th Cir. 2008) ................................................................18, 19

*In re Walsh*,
  359 B.R. 389 (Bankr. D. Mass. 2007) ....................................................10, 14

*Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village
  Properties, Ltd.)*,
  723 F.2d 441 (5th Cir. 1984) ........................................................................8

*Woods v. Alvarado State Bank,*,
  19 S.W.2d 35, 35 (Tex. 1929). .....................................................................8

## FEDERAL STATUTES

11 U.S.C. § 522(m) .......................................................................................12, 13

11 U.S.C. § 522(p) ............................................................. 9, 10, 11, 15, 18, 19, 20

11 U.S.C. § 541(a)(2)(A) ......................................................................................9

## STATE STATUTES

Tex. Const. Art. XVI, § 50.................................................................................6, 13

Tex. Fam. Code § 5.001 ....................................................................................7, 13

Tex. Prop. Code § 41.001 ...........................................................................................8

DAL:760407.4

## RECORD REFERENCES

This case is an adversary proceeding in the context of a bankruptcy case. Items which appear in the bankruptcy court's docket for this adversary proceeding will be cited as "Docket No. ____." Items which appear in the docket for the main bankruptcy case, Case No. 07-36293-HDH, will be cited as "Main Case Docket No. ____." All items appearing in the Record on Appeal will also bear a parallel citation. The Record on Appeal consists of Volumes 1, 3, 4, and 5. A citation to page 100, appearing in Volume 3, will be R3: 100.

## STATEMENT OF JURISDICTION

This case is an interlocutory appeal undertaken with permission of the Court. On June 9, 2009, Ann Kim filed her Motion for Leave to Appeal.  This Court granted the Motion on November 20, 2009.

## ISSUE PRESENTED

Whether the Bankruptcy Court erred in finding that the homestead protection afforded under Texas state law does not create a separate and distinct interest in the spouse of a bankruptcy debtor that would entitle the spouse to prevent the forced sale of her home, or else to compensation for her homestead interest.

## STATEMENT OF THE CASE

Nature of the Case

This appeal is from an adversary proceeding filed in connection with a bankruptcy case.  On December 21, 2007, Dome Entertainment Center, Inc. filed an involuntary bankruptcy petition against Odes Ho Kim.[1]  On October 20, 2008, Odes Ho Kim, acting as the debtor in possession, instituted this adversary proceeding against his wife Chong Ann Kim in order to determine the extent of her rights in their shared residence.[2]   Dome intervened in the adversary proceedings.[3]  Both Dome and Chong Ann Kim filed Motions for Summary Judgment.[4]  The Bankruptcy Court entered a Memorandum Opinion and Order on the Motions for Summary Judgment on May 5, 2009.[5]

Trial Court

Bankruptcy Court, Northern District of Texas, Dallas Division, the Honorable Harlin D. Hale presiding.

Trial Court's Disposition

The Bankruptcy Court entered an Order and Memorandum Opinion on Motions for Summary Judgment denying Ann's Motion for Summary Judgment and granting in part Dome's Motion for Summary Judgment on May 19, 2009.[6]

---

[1] Main Case Docket No. 1.

[2] Docket No 1.

[3] Docket No. 6, 7.

[4] R3: 54-12, Docket Nos. 10-11, 13-14.

[5] R4: 492-508, Docket No. 51.

[6] R4: 492-508, Docket No. 51.

ix

## I.   INTRODUCTION

This case presents the question of whether a person whose spouse is an involuntary debtor in bankruptcy may be deprived of her homestead right in order to satisfy her spouse's debts.  Chong Ann Kim ("Ann Kim" or "Mrs. Kim"), a resident of Texas, is the spouse of an involuntary bankruptcy debtor.  Her husband Odes Ho Kim ("Odes Kim" or "Mr. Kim") entered into an unsuccessful business deal in California.  Mrs. Kim was not a party to that transaction.  After the deal devolved into a lawsuit, Mr. Kim's judgment creditor placed him into involuntary bankruptcy.  Under Texas law, one spouse cannot lose its homestead protection provided by Texas law based on the debts or acts of the other spouse.  This principle, and the protection it affords to Mrs. Kim, is not altered by the involuntary bankruptcy of her husband.

## II.   STATEMENT OF THE FACTS

### A.   Background Facts

In the summer of 2004, Odes Kim and Ann Kim, long-time residents of Texas, purchased a home at 2013 Cottonwood Valley Circle, Irving, Texas ("the Irving Residence").[7]  At the time of the purchase, litigation was pending against Mr. Kim in superior court in California as the result of a soured commercial business venture between Mr. Kim and Dome Entertainment, Inc. ("Dome").  On

---

[7] *See, e.g.*, 3R: 299-302, Docket No. 15-2 at pp. 9-12.

1

November 9, 2006, more than two years after the purchase of the home, judgment was entered against Odes Kim on Dome's contract claim.[8]  The judgment, together with attorneys fees, totaled over five million dollars.[9]

On December 21, 2007, Dome initiated involuntary bankruptcy proceedings against Odes Kim in Texas.[10]  Mr. Kim was successful in converting the proceeding from a liquidation bankruptcy under Chapter 7 to a reorganization bankruptcy under Chapter 11.[11]  Due to that conversion, the bankruptcy trustee was dismissed and Mr. Kim now operates as the debtor-in-possession.  Mr. and Mrs. Kim continue to reside in the Irving Residence.  Mr. Kim sought to exempt the Irving Residence under Texas law regarding homesteads; however, the bankruptcy court limited his exemption to $136,875, the amount statutorily allowed when a debtor in bankruptcy has owned his home for less that 1215 days prior to the filing of the bankruptcy petition.[12]  The Kims contracted for the purchase of the Irving Residence on August 1, 2004, and closed on August 27, 2004,[13] 1237 days and

---

[8] *Dome Entertainment Center, Inc. v. Odes Kim, et al.*, No. BC 286176, (Cal. Super. Ct. Nov. 9, 2006) (judgment on special jury verdict).

[9] *Id.*

[10] Main Case Docket No.1.

[11] Main Case Docket No. 55.

[12] Main Case Docket No. 214.  That ruling is the subject of a separate appeal by Mr. Kim.

[13] *e.g.* R3: 122, Docket 14-1 at p. 2.

1211 days respectively before the date that involuntary bankruptcy proceedings were instituted against Mr. Kim.

## B.  Proceedings and Decision Below

Ann Kim is not a debtor in the bankruptcy proceeding.  In order to determine what right Mrs. Kim had to retain possession of the home, Mr. Kim, acting on behalf of the bankruptcy estate, initiated an adversary proceeding against Mrs. Kim.[14]  Dome sought, and was granted, leave to intervene in those proceedings.[15]  Mrs. Kim filed a motion for summary judgment[16] and Dome filed a cross-motion for summary judgment.[17]  Mrs. Kim sought protection of her home, arguing that Texas homestead law prevents her from being dispossessed of her home based on a debt incurred by her spouse, or at least entitles her to compensation for the value of her homestead interest.

The bankruptcy court held that the spouse of a debtor in bankruptcy has no protectable interest in her homestead.[18]  The court therefore granted Dome's motion for summary judgment on this issue.[19]

---

[14] Docket No. 1.

[15] Docket Nos. 6, 7.

[16] R3: 48-71, Docket Nos. 10-11.

[17] R3: 98-120, Docket No. 13-14.

[18] R4: 501-02, Docket No. 51 at p. 10-11.

[19] R4: 502, Docket No. 51 at p. 11.  The Bankruptcy Court also denied Dome's motion for summary judgment on the issue of whether Mrs. Kim owns a compensable interest in the

### III.  SUMMARY OF THE ARGUMENT

Under Texas law, Ann Kim has a right to retain possession of her homestead despite any debts which her husband may incur.  Creditors seeking to enforce a judgment against her husband are not permitted to dispossess Mrs. Kim of her home in order to satisfy the judgment.  In what was nothing more than a brazen attempt to circumvent Texas constitutional protections, Dome sought bankruptcy for Mr. Kim.  Dome's sole goal is to achieve through bankruptcy what it cannot achieve in any other court in the State of Texas—to enforce its judgment against Mrs. Kim's protected homestead.  Mrs. Kim is not the subject of Dome's judgment and has no liability for the judgment.  Neither is Mrs. Kim a party to the involuntary bankruptcy that Dome initiated against Mr. Kim.  The Texas Constitution's homestead provisions were specifically designed to prevent just this result—the forced sale of an individual's home to satisfy the debts of the individual's spouse.

Despite decades of consistent case law demonstrating the high level of protection afforded to a homestead under Texas law, the bankruptcy court found that recent changes to the Bankruptcy Code eviscerate the protections which Texas law provides to Mrs. Kim.  Such a finding is not compelled by the text of the Code or by precedent.  To the contrary, case law requires that provisions of federal law

---

residence due to the use of her separate property to fund part of the purchase; however, that issue is not the subject of this appeal.

be interpreted to give utmost respect to protections provided by state law.  The non-debtor spouse of a bankruptcy debtor is entitled to invoke his or her own right to homestead protection separate and apart from any rights afforded to the debtor spouse by the Bankruptcy Code.

## IV.   STANDARD OF REVIEW

A bankruptcy court's conclusions of law and mixed questions of law and fact are reviewed de novo.  *In re McLain*, 516 F.3d 301, 307 (5th Cir. 2008). Accordingly, a grant of summary judgment is reviewed de novo.  *Id.*  The question giving rise to this appeal is strictly one of law.

## V.   ARGUMENT

The Bankruptcy Court's grant of partial summary judgment to Dome was based on a conclusion of law that contradicts years of jurisprudence regarding the protections that Texas provides to homestead holders.  The Bankruptcy Court incorrectly found that the homestead protections which Texas provides each individual citizen can be set aside if an individual's spouse becomes a debtor in bankruptcy.  Contrary to the holding below, Mrs. Kim's right to retain possession of her homestead is not compromised by her husband's status as a bankruptcy debtor.   In addition to presenting the arguments in this brief, Mrs. Kim incorporates by reference the arguments presented in the brief submitted by the debtor-in-possession, Odes Kim, in this matter.

**A.      Texas law provides Mrs. Kim with a vested property interest in her homestead which she cannot lose based on the debts of her spouse.**

Under the Texas Constitution, Mrs. Kim has a homestead right which is separate and distinct from any right of her husband.  The Texas Constitution provides special protections for homestead property.  *See* TEX. CONST. ART. XVI, § 50.  A homestead is a constitutionally created legal interest that protects a property from all but a few specifically enumerated kinds of liens that may be imposed against a homestead.  *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992).  Each spouse has his or her own, independent homestead right.  As the Supreme Court stated in *United States v. Rodgers*, "The effect of these provisions in the Texas Constitution is to give ***each spouse in a marriage a separate and undivided possessory interest in the homestead***, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs."  461 U.S. 677, 685 (1983) (emphasis added).

Mrs. Kim's right to possess her home is not dependant on any ownership interest that she might have in the home.  As the Court stated, "It bears emphasis that the rights accorded by the homestead laws vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee interest in the homestead."  *Rodgers*, 461 U.S. at 685.  Moreover, "The Texas homestead right is not a mere statutory entitlement, but a vested property right.  As the Supreme Court of Texas has put it, a spouse 'has a vested estate in the land of which she

6

cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.'" *Rodgers,* 461 U.S. at 686 (citations omitted).

Mrs. Kim has a right to retain possession of her home regardless of any debts which Mr. Kim may incur.  TEX. FAM. CODE. § 5.001; *Rodgers*, 461 U.S. at 685.   This point is a fundamental principle underlying Texas homestead protection—Mr. Kim is incapable of impairing Mrs. Kim's homestead right without her participation and consent.  The bankruptcy court's finding that "Mrs. Kim has no separate and distinct homestead interest in the property"[20] is plainly contrary to *Rodgers* and Texas law.

**B.     The Bankruptcy Code does not abrogate the homestead rights of a debtor's spouse.**

The inability of Mr. Kim to impair Mrs. Kim's homestead rights is not altered by the fact that Mr. Kim is a debtor in bankruptcy.  The key flaw in the holding below is that the bankruptcy court determined that a provision of the Bankruptcy Code, which determines the rights and liabilities of *Mr. Kim*, acted to deprive *Mrs. Kim* of her vested property rights.  Mrs. Kim is not a debtor in bankruptcy and her rights are not determined by the Bankruptcy Code.  Rather, Mrs. Kim's property rights are determined by state law.

---

[20] Docket No. 51 at p. 11.

1.   *Nothing in the Bankruptcy Code requires the impairment of the homestead rights of a non-debtor spouse.*

Provisions of the Bankruptcy Code must be interpreted to respect property rights established by state law. Property interests and estates are to be dealt with in the bankruptcy courts in such a manner as to give full respect to the property rules followed in the state where the property is located. *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962); *see also Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825 (1991); *Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village Properties, Ltd.)*, 723 F.2d 441 (5th Cir. 1984) (state created property rights, in a bankruptcy context, will not be destroyed by implication). Homestead exemptions in Texas have their origins in both constitutional and statutory provisions. TEXAS CONST. ART. 16, § 50; TEX. PROP. CODE § 41.001. When interpreting provisions of Texas homestead exemptions, a court must liberally construe them to protect the homestead. *Painewebber Inc. v. Murray*, 260 B.R. 815 (E.D. Tex. 2001); *In re Cole*, 205 B.R. 382, 384 (Bankr. E.D. Tex. 1997); *Woods v. Alvarado State Bank*, 19 S.W.2d 35, 35 (Tex. 1929). In fact, courts must uphold and enforce the Texas homestead laws even though, in so doing, the court might unwittingly assist a debtor in wrongfully defeating his creditor. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502 (5th Cir. 1992) (quoting *Cocke v. Conquest*, 35 S.W.2d 673 (1931)). These principles govern in the bankruptcy context as well. As the Supreme Court stated in *Butner*, "Property interests are created and defined

8

by state law.  Unless some federal interest *requires* a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  *Butner v. United States*, 440 U.S. 48, 55 (1979) (emphasis added).

The provisions of the Bankruptcy Code dealing with exemptions do not require that Mrs. Kim forfeit the property rights which Texas law affords her.  To the contrary, the provisions of the Bankruptcy Code define the rights and liabilities of the debtor.  At the commencement of a bankruptcy, an estate is created comprised of "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the ***sole, equal, or joint management and control of the debtor***."  11 U.S.C. § 541(a)(2)(A) (emphasis added).  In other words, the estate is comprised of the property which the debtor has a legal right to encumber.  As set forth above, Mr. Kim has no ability to adversarily affect Mrs. Kim's homestead interests.

From this estate, the debtor is entitled to make certain exemptions.  Chapter 5, Subchapter II of the Code, as indicated by its title, defines the "Debtor's Duties and Benefits."  Among the duties and benefits provided for in Subchapter II is the homestead exemption stated in 11 U.S.C. § 522(p):

> [A] ***debtor*** may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate [$136,875] in value in—

9

. . .

> (D) real or personal property that the debtor or dependent
> of the debtor claims as a homestead.  (Emphasis added).

This provision, while defining the scope of the *debtor*'s exemption rights, does not purport to impinge on the rights of third parties who are not subject to the bankruptcy court's jurisdiction.

> 2.     *The Court should embrace the reasoning of* In re Walsh.

That section 522(p) does not act to impair the homestead right of a non-debtor spouse was recognized by the court in *In re Walsh*, 359 B.R. 389 (Bankr. D. Mass. 2007).  The *Walsh* court stated:

> Thus, wholly apart from the allowance or disallowance of the [Debtor's] Homestead Claim, the Debtor's spouse can invoke the Homestead Estate as a protection against or bar to the claims of creditors of the Debtor, and he can do so whether or not his wife is a bankruptcy debtor, and even in his wife's Chapter 7 case.  He can do so because he is invoking not *her* right to protection but rather *his* right, and he does so not to protect *her* interest in the Residence under the Homestead Claim but rather to protect *his* interest in the Residence under the Homestead Estate.

*Id.* at 394.  The court permitted the non-debtor husband to "invoke the full [state] homestead protections for his benefit and that of his family without regard to his wife's bankruptcy and, because he [wa]s not the debtor, without being subject to any limitations that would otherwise be applicable were he in bankruptcy." *Id.*

10

The Supreme Court has recognized the distinct homestead rights of a spouse in other contexts involving federal law. *United States v. Rodgers*, discussed above, examined the issue of the sale of property pursuant to a federal tax statute authorizing judicial sale of certain properties to satisfy tax indebtedness where an innocent spouse had a homestead estate. *Rodgers*, 461 U.S. 677. Given that the government is a not an "ordinary creditor" but has "sovereign prerogative" to collect delinquent taxes, the Court determined that the homestead could be sold, notwithstanding the interests of the innocent spouse. *Id.* at 697. However, the court also determined that the innocent spouse must be fully compensated for the vested property interest created by her homestead right under Texas law. *Id.* at 698. In other words, the Court held that a federal law allowing for the collection of delinquent taxes must be interpreted to preserve the innocent spouse's vested interest in the homestead.

In reaching the conclusion that section 522(p) acts to eliminate the homestead rights of the non-debtor spouse, the bankruptcy court relied on *In re McCombs*, No. 06-35891, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. Dec. 17, 2007). The reasoning of *McCombs* is questionable because the court in that case conflated the rule that disallows spouses in a joint bankruptcy from electing exemptions stemming from different sources of law with a (nonexistent) rule that would require a non-debtor spouse to forfeit property rights due to her spouse's

11

bankruptcy.   In *McCombs*, the court began by saying that the non-debtor spouse was "attempting to revive the extinct practice of spouses selecting separate exemptions."  *Id.*, at *20.  The *McCombs* court cites *In re Cannady*, 653 F.2d 210, 212 (5th Cir. 1981) and *In re Allen*, 725 F.2d 290, 292 (5th Cir. 1984) as examples of the prior—but supposedly now "extinct"—practice and states that the "practice" was prohibited by Congress in 1984.  *Id.*

The fact is that spouses continue to have separate exemption rights after the 1984 amendments.  The Fifth Circuit confirmed, subsequent to 1984, that "[b]oth husband and wife may claim exemptions individually," citing 11 U.S.C. § 522(m). *In re Davis*, 170 F.3d 475, 478 (5th Cir. 1999).   And the language of 11 U.S.C. § 522(m) provides that "[s]ubject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case."

The limitation in subsection (b) is that in joint cases involving a husband and wife, "one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection." That is, in a joint proceeding, one spouse cannot elect state exemptions and the other federal exemption.[21]   Under the statutes as construed by the Fifth Circuit, each spouse has separate exemption rights.  Dome argues that the second spouse has no homestead.  That is untrue.  The only restriction is that if they are in a joint

---

[21]  Previously, as exemplified by *Cannady* and *Allen*, spouses had been permitted to select exemptions under different law.

bankruptcy proceeding, they cannot select different homestead law.  The restriction is not applicable, as Odes Kim and Ann Kim each rely on Texas law.

All of the cases the *McCombs* court cited (as the Bankruptcy Court acknowledged) involved an attempt by one spouse to assert federal exemption rights, while the other asserted state rights (or, in one instance, rights under the laws of two different states).  *McCombs*, 2007 Bankr. LEXIS 4264, at *22-23. Here, of course, Odes Kim and Ann Kim are not co-debtors attempting to rely on different sources of law for their exemptions.  Ann Kim is not a bankruptcy debtor. Moreover, Odes Kim has elected Texas state law exemptions, and Ann Kim is asserting her homestead rights under Texas law.  Thus, the "extinct practice" of invoking exemptions under different law simply does not exist here.

After acknowledging this distinction, the *McCombs* court stated that the non-debtor spouse was asking the "court to recognize a second Texas homestead exemption for her in addition to the state exemption selected by the debtor."  The existence of the spouse's separate, or "second," right  should not have been controversial given the express recognition that each spouse has his or her own homestead rights under Texas and bankruptcy law.  *Rodgers*, 461 U.S. at 685-86; *Davis*, 170 F.3d at 478; 11 U.S.C. § 522(m); Tex. Const. Art. XVI, § 50; Tex. Fam. Code § 5.001.  But without even citing *Davis* or section 522, and summarily dismissing the Supreme Court's careful discussion of Texas homestead law in the

context of IRS cases, the *McCombs* court concluded that a non-debtor spouse loses her homestead rights.[22]   Ann Kim submits that to the extent *McCombs* would justify the result sought by Dome, it is contrary to controlling precedent and is flawed in its analysis.   The *Walsh* court reflects the better-reasoned treatment of the issue.

A similar claim of impermissible "stacking" was rejected in *In re Bippert*, 311 B.R. 456, 460 and n.2 (Bankr. W.D. Tex. 2004).   The court recognized the distinction between "stacking" of a federal exemption on top of state rights, which was eliminated by the 1984 amendments, and the continued ability of spouses to each claim exemption rights under state (or federal) law, and to thereby "double" the protected interest.   311 B.R. at 460 n.2; 471, n.25; 472; *In re Gallo*, 49 B.R. 28, 29-30 (Bankr. N.D. Tex. 1985).

Dome's position defies logic.   Prior to bankruptcy, each spouse has a separate and independent homestead right.   *E.g.*, *Rodgers*, 461 U.S. 677.   If both were in bankruptcy, each would have a separate and independent homestead right. *E.g.*, *Davis*, 170 F.3d at 478.   But Dome would have the non-debtor spouse lose her separate and independent homestead right as the result of an involuntary

---

[22] The court also distinguished *Rodgers* on the theory that it dealt with "the sale of community - property to satisfy separate debts," whereas the case at bar deals with the sale of community property to pay community debts.   Like *Rodgers*, the case before this Court involves the attempted forced sale of community property to satisfy an alleged debt incurred only by one spouse, Odes Kim.

14

proceeding initiated by a single alleged contract creditor of her husband.  Nothing in the statute dictates such an inequitable (and illogical) result.

To the contrary, the provisions of section 522(p) must be interpreted to respect property rights, as defined by state law, to the greatest extent possible.  As one bankruptcy court in the Eastern District of New York noted:

> **What has never been upheld, however, is the subordination of property rights of a non-creditor to the bankruptcy process** . . . .  When Congress determines that property of a third party, not a creditor or an insider of the debtor, and having nothing to do with the bankruptcy process, can be taken, affected or appropriated, wholly or partially, for the benefit of the debtor's estate or its creditors, it has gone beyond that which is permissible under the Bankruptcy Clause.

*In re Persky*, 134 B.R. 81, 97 (Bankr. E.D. N.Y. 1991) (emphasis added).  Any interpretation of section 522(p) which has the effect of impairing a third party's homestead right should be rejected.

3.   *The Bankruptcy Court's holding was influenced by a faulty interpretation of the facts.*

Contrary to the Bankruptcy Court's assertion, Mr. and Mrs. Kim did not purchase their home in order to take advantage of the so-called "mansion loophole."[23]   There is no evidence that the Kims moved to Texas after the

---

[23] The Bankruptcy Court stated as follows in its opinion:

> [T]he facts presented in this case largely are those which prompted Congress to place the limitations on a debtor's homestead exemption in § 522(p).  Mr. Kim has a large judgment against him in California.  After the judgment, he and his wife moved to Texas and bought an expensive house, which would be totally

15

California judgment was rendered.   Mr. and Mrs. Kim have resided and done business in Texas for many years.[24]   The Kims purchased the Irving Residence more than two years before Dome received its judgment against Mr. Kim in California.[25]

Outside the context of bankruptcy, there is no question that Dome would not be able to acquire Mrs. Kim's homestead in order to satisfy Mr. Kim's debts.  As *Butner* makes clear, the "happenstance of bankruptcy" is not intended to allow a party such as Dome access to property it would otherwise be barred from taking. *See Butner*, 440 U.S. at 55.

## C.   Even if bankruptcy law allowed for the sale of Mrs. Kim's homestead, she would be entitled to compensation for her life interest in the homestead.

In *Rodgers,* although the Court found that the spouse's interest in the homestead property could be sold to satisfy a tax lien, it also found that the innocent spouse would have to be compensated.  The Court concluded, "on the

---

exempt under state law.  After the order for relief was entered, the limits of § 522(p) now apply, which seems to fall in line with Congress' intent to close the mansion loophole.

R4: 502-03, Docket No. 51 p.11-12 n.3.

[24] The record contains ample evidence of this fact.  In 1995, the Kims entered into a Marital Property Agreement in Texas.  R4: 353-58, Docket No. 21 at p. 22-28.  Articles of Partnership that Mr. and Mrs. Kim signed in 1995 lists their business address as 11363 Denton Drive, Suite 125, Dallas, Texas 75229.  R4: 381-82, Docket No. 21-1 at pp. 19-20.  Checks written in conjunction with the purchase of the Irving Residence bear the address 155 Valwood Pky., Ste. # 130, Carrollton, TX 75007.  R3: 226, Docket No. 15-1 at p. 3.

[25] *Supra*, n. 8.

16

basis of what we are informed about the nature of the homestead estate in Texas, that it is the sort of property interest for whose loss an innocent third party must be compensated." *Rodgers*, 461 U.S. 698.  Indeed, failure to compensate the innocent spouse would be a taking without compensation—a violation of the Due Process right guaranteed by the Fifth Amendment.  *Id.* at 697-98.

The question arises as to the appropriate amount to compensate the non-debtor spouse in the present case, providing any sale of her interest is permissible in the first instance.  The *Rodgers* Court gave guidance on this issue as well, saying "although analogy is somewhat hazardous in this area, it may be said that the homestead laws have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property."  *Id.* at  685-86.  The *Rodgers* Court described the practical consequences of the principles they set forth:

> For example, if we assume, *only for the sake of illustration,* that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three non-delinquent surviving or remaining spouses, aged 30, 50, and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89%, and 64%, respectively, of the proceeds of the sale of their homes as compensation for that estate. In addition, if we assume that each of these hypothetical non-delinquent spouses also has a protected half-interest in the

17

> underlying ownership rights to the property being sold,
> then their total compensation would be approximately
> 99%, 95%, and 82%, respectively, of the proceeds from
> such sale.

*Id.* at 698-699.  Even if the property can be sold, Mrs. Kim would be entitled to the

value of her homestead interest.

**D.      The *In re Rogers* decision does not support the Bankruptcy Court's
holding.**

In granting summary judgment to Dome, the Bankruptcy Court cited a Fifth

Circuit case, *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212 (5th Cir. 2008), for

the proposition that the Texas homestead interest is not a vested property right.[26]

Nothing in *In re Rogers* calls into question whether the non-filing spouse of a

bankruptcy debtor has a vested interest in her homestead that is protectable

separate and apart from any rights of the debtor spouse.  As stated by the *In re*

*Rogers* court, "The issue [there was] whether the homestead exemption cap applies

to a homestead interest established within the 1,215-day period preceding the filing

of the bankruptcy petition despite the fact that the debtor acquired title to the

property before that statutory period."  513 F.3d at 215.   The case involved "a

question of first impression in this circuit: the statutory interpretation of the newly

enacted homestead exemption cap, 11 U.S.C. § 522(p)(1). . . ."  *Id.*   That statute,

by its express terms, addresses limitations on a debtor's ability to claim homestead

---

[26] R4: 502, Docket No. 51 at p. 11.

rights in certain instances.  It does not address the question presented here—a non-debtor spouse's protection under Texas homestead laws.  There is nothing in the statutory language which demonstrates a Congressional intent to deprive a non-debtor spouse of his or her rights.  And "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."  Id. at 227.

The *In re Rogers* court's discussion of homestead demonstrates that it was not holding that a homestead right lacked protection.  At various points in the opinion, the court stated that "[u]nder Texas law, '[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads;" *Id.* at 224, and that "a homestead interest is a legal right vested in the individual to attach exempt status to existing property interests."  *Id.* at 225.  That section 522(p) was construed to not apply to a *debtor's* homestead interest which attached less than 1215 days before bankruptcy, does not suggest that a non-debtor should lose her homestead interest because of an involuntary filing against her spouse within that period.  And the Supreme Court in *United States v. Rodgers* recognized that if federal law permitted forced sale of property subject to a homestead interest, the spouse that was deprived of his or her homestead rights would be entitled to compensation, and determined that valuing the homestead by analogy to a life

estate would be appropriate.  In holding for the debtor in *In re Rogers*, the Fifth Circuit acted to protect the homestead interest, not to undermine it.

The debtor in *In re Rogers* had lived with her former husband at one location, then relocated to her own property after their separation.  *Id.* at 216. Although she had owned the property for over ten years, she had lived in it for less than two years when she filed for bankruptcy.  *Id.*  The court held that section 522(p) was intended to limit the homestead exemption only in situations where the debtor obtained a "vested economic interest in property" fewer than 1215 days prior to bankruptcy.  *Id.* at 223-227.  The provision was not intended to limit the homestead exemption where property already owned by the debtor obtained homestead status during the statutory period.  *Id.*  *In re Rogers* does not contradict the holding of *United States v. Rodgers*, which protects the rights of a non-debtor spouse.

## VI.   CONCLUSION

The Bankruptcy Court erred in finding that the bankruptcy of one spouse causes the other spouse to forfeit his or her homestead protection and, therefore, erred in granting summary judgment to Dome.  For the foregoing reasons, Appellant Ann Kim requests that the Court reverse the grant of summary judgment to Dome and remand the case with instructions to enter judgment for the Appellant.

Respectfully submitted,

**ANDREWS KURTH LLP**


By: /s/ Charles L. Perry

      Charles L. Perry
      State Bar No. 15799900
      Monica S. Blacker
      State Bar No. 00796534
      1717 Main Street, Suite 3700
      Dallas, Texas  75201
      Telephone: (214) 659-4681
      Facsimile: (214) 659-4894

**ATTORNEYS FOR APPELLANT
CHONG ANN KIM**

21

## CERTIFICATE OF SERVICE

This is to certify that on February 4, 2009, a true and correct copy of the

foregoing document was served via ECF on the following counsel of record:

Gerrit M. Pronske
Rakhee V. Patel
Christina W. Stephenson
Pronske & Patel, P.C.
1700 Pacific Avenue, Suite 2260
Dallas, Texas  75201

Howard Marc Spector
Nathan M. Johnson
Howard Marc Spector, P.C.
12770 Coit Rd., Suite 1100
Dallas, Texas  75251

/s/ Charles L. Perry
Charles L. Perry

22

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

☑     this brief contains 4,620 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), or

☐     this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

☑     this brief has been prepared in a proportionally spaced typeface using Word 2003 in 14-point Times New Roman, or

☐     this brief has been prepared in a monospaced typeface using _____ with _____.

/s/ Charles L. Perry
Charles L. Perry
Attorney for Appellant

Dated:  March 2, 2010

23