Civil Action No. 3:09-CV-1082-N (Lead)
Other Civil Action Numbers:
3:09-CV-1083-N
3:09-CV-1187-N
ECF

---

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

---

CHONG ANN KIM,

*Appellant,*

v.

ODES HO KIM, *et al.*,

*Appellees.*

---

Appeal from the United States Bankruptcy Court
For the Northern District of Texas, Dallas Division
Adversary Proceeding No. 08-03440-HDH

---

**BRIEF FOR THE APPELLEE,
ODES HO KIM**

---

Gerrit M. Pronske
State Bar No. 16351640
Rakhee V. Patel
State Bar No. 00797213
Christina W. Stephenson
State Bar No. 24049535
PRONSKE & PATEL, P.C.
2200 Ross Ave., Ste. 5350
Dallas, Texas 75201

Telephone:  (214) 658-6500
Facsimile:  (214) 658-6509

**ATTORNEYS FOR ODES HO KIM**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that the judge of this Court may evaluate possible disqualification or recusal.

A.   **Parties:**

      Appellee:               Odes Ho Kim

      Appellee:               Dome Entertainment Center, Inc.

      Appellant:             Chong Ann Kim

B.   **Attorneys:**

      Appellee:               Gerrit M. Pronske
                                Rakhee V. Patel
                                Christina W. Stephenson
                                Pronske & Patel, P.C.
                                2200 Ross Ave., Suite 5350
                                Dallas, Texas 75201
                                (214) 658-6500

      Appellee:               Howard M. Spector
                                  Nathan M. Johnson
                                  Howard Marc Spector, P.C.
                                12770 Coit Road
                                Banner Place, Suite 1100
                                Dallas, Texas 75251
                                (214) 365-5377

      Appellant:             Monica S. Blacker
                                  Andrews Kurth LLP
                                  1717 Main Street, Suite 3700
                                  Dallas, Texas 75201
                                (214) 659-4576

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................................ii

TABLE OF CONTENTS..........................................................................................................iii

TABLE OF AUTHORITIES .................................................................................................... iv

STATEMENT OF THE ISSUES................................................................................................ 1

STATEMENT OF THE CASE................................................................................................... 2

STATEMENT OF FACTS ......................................................................................................... 3

SUMMARY OF THE ARGUMENT ......................................................................................... 6

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT AND AUTHORITIES ......................................................................................... 8

CONCLUSION......................................................................................................................... 24

PRAYER................................................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 469-470, 102 L.Ed.2d 493 (1988) .................................................................................................. 18

*Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502 (5th Cir. 1992) ..................... 9

*Cadle Co. v. Ortiz,* 227 S.W.3d 831, 835 (Tex.App. –Corpus Christi 2007) .............................. 9

*Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798) .......................................................................... 18

*Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81 (Bankr. E.D.N.Y. 1991). ............................................................................................................. 16, 17

*Davis v. Davis (In re Davis)*, 170 F.3d 475 (5th Cir.), cert. denied, 528 U.S. 822, 120 S.Ct. 67, 145 L.Ed.2d 57 (1999) ....................................................................................................... 10, 11

*Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) ........ 18, 20

*English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) ................................................................. 10

*Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1464 (5th Cir. 1991) ...................................................................................................................... 7

*Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) .......................... 8

*Florey v. Estate of McConnell*, 212 S.W.3d 439, 443 (Tex.App. –Austin 2006) ......................... 9

*Geldard v. Watson*, 214 S.W.3d 202 (Tex.App.-Texarkana 2007) ........................................... 13

*H.D. Smith Wholesale Drug Co. v. McCombs (In re McCombs)*, No. 07-3043, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. December 17, 2007) ........................................................... 13

*Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992) ............................................................. 8

*Immigration and Naturalization Service v. Enrico St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). ............................................................................................................. 20

*In re Chouinard*, 358 B.R. 814 (Bankr. M.D. Fla. 2006) ......................................................... 14

*In re Cole*, 205 B.R. 382, 384 (Bankr. E.D. Tex. 1997) ................................................. 9

*In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) ................................. 8

*In re Fehmel*, No. 07-60831, 2008 Bankr. LEXIS 2334 (Bankr. W.D. Tex. June 17, 2008) ..... 14

*In re Fussel*, 928 F.2d 712, 715 (5th Cir. 1991) ........................................................ 7

*In re LevenHar*, 30 B.R. 976 (Bankr. E.D.N.Y. 1983) ................................................. 16

*In re Limperis*, 370 B.R. 859 (Bankr. S.D. Fla. 2007) ................................................. 14

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855, 110 S.Ct. 1570, 1586-1587, 108 L.Ed.2d 842 (1990) ................................................................................. 18

*Landgraf v. USI Film Products*, 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994) ......................................................................................................... 18, 19

*Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*, 106 B.R. 943, 952 (N.D. Tex. 1989) ...... 7

*Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961) ............................................................................................................ 8

*Majeski v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex.App. –Austin 2005) .......................... 8

*Martin v. Hadix*, 527 U.S. 343, 357-358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) .................. 19

*Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 (5th Cir. 1994) ................................. 7

*Painewebber Inc. v. Murray*, 260 B.R. 815 (E.D. Tex. 2001) .......................................... 9

*Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*), 125 F.3d 292, 295 (5th Cir. 1997) ............. 7

*Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962) ...................................................... 8

*Republic of Austria v. Altmann*, 541 U.S. 677, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) ....... 18, 19

*Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 600 (5th Cir. 1994) .......................... 7

*United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) . 12, 13, 15

*Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village Properties, Ltd.)*, 723

    F.2d 441 (5th Cir. 1984) ........................................................................................8

*Woods v. Alvarado State Bank*, 19 S.W.2d 35, 35 (Tex. 1929)....................................................9

## Statutes

28 U.S.C. § 158............................................................................................................7

TEX. CIV. PRAC. & REM. CODE § 31.002 ...................................................................11

TEX. FAM. CODE. ANN. § 5.001...................................................................................13

TEX. PROP. CODE. ANN. § 41.001 ..........................................................................8, 12

TEX. PROP. CODE. ANN. § 41.008 ............................................................................12

## Other Authorities

Frimet, *The Birth of Bankruptcy in the United States*, 96 Comm. L. J. 160 (1991). ..................17

HR Rep. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 WL 832198 *15-16 (2005), 2005 U.S.

    Code Cong. & Admin. News 2005, pp.88, 102 .....................................................22

Report of the Comm'n on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137,

    93rd Cong., 1st Sess., pts. I & II, at 4-503 (1973). ................................................10

## Constitutional Provisions

TEX. CONST. of 1845, art. VII, § 22. ..........................................................................13

TEX. CONST. art. 16, § 50................................................................................8, 12, 13

U.S. CONST. amend. V. ...............................................................................................16

## STATEMENT OF THE ISSUES

1.      Texas state law, not federal bankruptcy law, should control in determining Mrs.
Kim's homestead protections.

2.      Texas state law vests Mrs. Kim with homestead rights which should prevent a
forced sale of the property or for which she is entitled to compensation.

3.      To the extent the Bankruptcy Court's Memorandum Opinion and Order impairs
Mrs. Kim's homestead interests, it effects a retroactive and unconstitutional taking of her
vested property rights.

4.      The Bankruptcy Court erred in finding that Mr. and Mrs. Kim moved to Texas
and bought an expensive home after a judgment was entered against Mr. Kim in California.

## STATEMENT OF THE CASE

Nature of the Case:     On or about December 28, 2007, Dome Entertainment Center, Inc. ("Dome") filed a signed involuntary bankruptcy petition against Odes Ho Kim ("Mr. Kim" or "Debtor") (Case No. 07-36293-HDH) (R. 3:77). On or about May 9, 2008, the Bankruptcy Court entered an Order granting Mr. Kim's Motion to Convert Case from Chapter 7 to Chapter 11. On or about June 18, 2008, Dome filed its Objection to Debtor's Claim of Exemptions (R. 3:73). After a hearing the Bankruptcy Court entered an Order sustaining Dome's Objection to Debtor's Claim of Exemptions (R. 4:494). Mr. Kim instituted this adversary proceeding October 20, 2008 by filing Plaintiff's Original Complaint for Declaratory Judgment to determine the extent of the bankruptcy estate's right and/or interest in and to the Property[1] (R. 4:494). Dome intervened and both Dome and Chong Ann Kim ("Ann" or "Mrs. Kim") filed Motions for Summary Judgment to determine issues related to Ann's interest in the Property (R. 3:48-53, 98-103). The Bankruptcy Court entered a Memorandum Opinion and Order on the Motions for Summary Judgment on May 5, 2009 (R. 4:490-508).

Trial Court:     Bankruptcy Court, Northern District of Texas, Dallas Division, the Honorable Harlin D. Hale presiding.

Trial Court's Disposition:     The Bankruptcy Court entered an Order and Memorandum Opinion on Motions for Summary Judgment, denying Ann's Motion for Summary Judgment and granting in part Dome's Motion for Summary Judgment on May 19, 2009 (R. 4:490-508).

The record consists of 4 volume(s). Volume one is cited as (R. 1:Page).

---

[1] The real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038 (the "Property").

2

## STATEMENT OF FACTS RELEVANT
## TO THE ISSUES SUBMITTED FOR REVIEW

### *The Dome Litigation*

Dome Entertainment Center, Inc. ("Dome") began constructing an entertainment/retail complex on Sunset Boulevard in Hollywood in 2000.  Dome began negotiating with Mr. Odes Ho Kim ("Mr. Kim" or the "Debtor") in 2002, shortly before the complex was scheduled to open.  Mr. Kim is Korean and though he speaks and writes limited English, he has difficulty understanding more complicated English, such as business or legal communications.  After a series of rushed negotiations, Mr. Kim signed a proposed lease package with specific options. However, Dome substituted an exhibit of the package that included material terms without Mr. Kim's authorization before sending the package to its lender for approval.

Problems ensued with the business dealings and in July 2002, Mr. Kim's attorney filed a lawsuit on Mr. Kim's behalf against Dome for breach of contract and misrepresentation, mistakenly attaching the lease package with the unauthorized substituted exhibit.  Dome sued Mr. Kim in November 2002 for unlawful detainer, attaching the unauthorized lease package. Mr. Kim's attorney was unaware that the unauthorized substitution had been made.  In February 2003, the unlawful detainer suit was converted into an ordinary civil action.

In May 2004, Dome produced documents disclosing the intentional substitution of the pertinent exhibit.  Nevertheless, the trial court granted Dome's Motion for Judgment on the Pleadings and barred Mr. Kim from claiming the lease package was unenforceable. A jury trial was held wherein Mr. Kim was precluded from putting on exculpatory evidence and the jury found that Mr. Kim owed $3,765,569 in damages. The court entered judgment on November 9, 2006.  Mr. Kim appealed the judgment and all orders made final by it.  In April 2007, Dome moved for attorneys' fees and costs based on a fee provision in the lease package.  On June 21,

2007, the court awarded Dome $1,872,453 in attorneys' fees and costs.   Mr. Kim timely appealed that order on July 23, 2007.   On April 7, 2009 the Court of Appeal of the State of California, Second Appellate District, Division Eight, entered its order affirming the judgment of the Superior Court of Los Angeles County.

### _Mr. and Mrs. Kim's Homestead_

Mr. Kim and his wife, Chong Ann Kim ("Mrs. Kim" or "Ann") have been residents of the state of Texas for almost thirty (30) years.   Mr. and Mrs. Kim signed a New Home Contract in the amount of $1,108,750.00 on June 14, 2004 (R. 3:185).   The Final Settlement Statement was signed on August 24, 2004.   Funds paid for the house totaled $1,048,028.36 (R. 3:86).   On September 2, 2004, a Warranty Deed was signed for 2013 Cottonwood Valley Circle, Irving, TX 75038 (the "Property") (R. 3:215).   After the new home on the Property was completed, Mr. and Mrs. Kim sold their former homestead.   Mr. and Mrs. Kim live at the Property, and claim it as their homestead (R. 4:416).

### _The Involuntary Bankruptcy_

On or about December 21, 2007, Dome filed an unsigned involuntary bankruptcy petition against Mr. Kim (R. 3:77). On or about December 28, 2007, Dome filed, for the first time, a signed involuntary bankruptcy petition against Mr. Kim (R. 3:78).   The Bankruptcy Court, after a hearing held April 21, 2008, entered an Order for Relief with Notice of Deficiency on April 23, 2008 (R. 3:78).   On or about June 18, 2008, Dome filed its Objection to Debtor's Claim of Exemptions ("Dome's Objection") (R. 3:78). The Bankruptcy Court, after a hearing held September 29, 2008, entered an Order Regarding Debtor's Claims of Exemptions (the "Exemption Order") (R. 4:494), limiting Mr. Kim's claim of exemption as to the real property and improvements located at 2013 Cottonwood Valley Circle, Irving, Texas 75038

and overruling Mr. Kim's challenge to the constitutionality or applicability of 11 U.S.C. § 522(p) to the bankruptcy case with respect to the Property. Mr. Kim timely appealed the Exemption Order, and the District Court's affirmation of same.  Such appeal is currently pending at the Fifth Circuit Court of Appeals.

Mr. Kim instituted Adversary Proceeding No. 08-03440 on October 20, 2008 by filing Plaintiff's Original Complaint for Declaratory Judgment to determine the extent of the bankruptcy estate's interest and/or right in and to the Property (R. 4:419-420).   Dome intervened and both Dome and Mrs. Kim filed Motions for Summary Judgment to determine issues related to Mrs. Kim's interest in the Property (R. 3:48-53, 98-103).   The Bankruptcy Court entered a Memorandum Opinion and Order on the Motions for Summary Judgment on May 19, 2009, denying Mrs. Kim's Motion for Summary Judgment and granting in part Dome's Motion for Summary Judgment (R. 4:490-508).   Mr. and Mrs. Kim appealed the Memorandum Opinion and Order on May 29, 2009 (R. 4:509-511, 519-521) and Dome cross-appealed the Memorandum Opinion and Order on June 8, 2009 (R. 1:7).  On November 19, 2009, the District Court granted the parties' Motions for Leave to Appeal (R. 1:43-44).   On January 15, 2010, the District Court entered an order consolidating the three appeals of the Memorandum Opinion and Order.

## SUMMARY OF THE ARGUMENT

Texas state law, not federal bankruptcy law, should control in determining Mrs. Kim's homestead protections.  The Fifth Circuit has directed that courts must uphold and enforce Texas homestead laws.  Furthermore, Congress has not expressly or impliedly preempted Texas homestead law.  Thus, Texas state law should control any determination regarding Mrs. Kim's homestead rights.

Texas state law vests Mrs. Kim with homestead rights which (1) should prevent a forced sale of the property or (2) for which she is entitled to compensation.  The United States Supreme Court has ruled that Texas homestead rights are vested property rights for which just compensation or its equivalent must be paid in case of condemnation by the state.  Thus, to the extent the Bankruptcy Court's Memorandum Opinion and Order impairs Mrs. Kim's homestead interests, it effects a retroactive and unconstitutional taking of her vested property rights.

Finally, the Bankruptcy Court erred in finding that Mr. and Mrs. Kim moved to Texas and bought an expensive home after a judgment was entered against Mr. Kim in California. The Debtor has been a Texas resident for almost thirty (30) years and the Property was purchased two (2) years before Dome's judgment was entered.  Therefore, the policy considerations behind the enactment of Section 522(p) are not applicable to Mr. and Mrs. Kim.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*), 125 F.3d 292, 295 (5th Cir. 1997). The bankruptcy court's legal conclusions are always subject to *de novo* review. *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122 (5th Cir. 1994); *In re Fussel*, 928 F.2d 712, 715 (5th Cir. 1991). "*De novo*" review requires the Court "to make a judgment independent of the bankruptcy court's without deference to that court's analysis and conclusions." *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler),* 106 B.R. 943, 952 (N.D. Tex. 1989) (Fish, J.) When a bankruptcy court premises a finding of fact upon an improper legal standard, that finding "loses the insulation of the clearly erroneous rule." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1464 (5th Cir. 1991). The Court must give *de novo* review to mixed questions of law and fact. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 600 (5th Cir. 1994).

District courts' jurisdiction to hear appeals in bankruptcy cases encompasses final judgments, orders, and decrees, as well as certain interlocutory orders and decrees. 28 U.S.C. § 158(a). The District Court granted the Parties Motions for Leave to Appeal on November 19, 2009, and thus, the District Court has jurisdiction to hear the appeal from this interlocutory Order and Memorandum Opinion.

## ARGUMENT AND AUTHORITIES

A.    <u>Texas State Law, Not Federal Bankruptcy Law, Should Control in Determining Mrs. Kim's Homestead Protections.</u>

Property interests and estates are to be dealt with in the bankruptcy courts in such a manner as to give full respect to the property rules followed in the state where the property is located. *Reid v. Richardson*, 304 F.2d 351 (4th Cir. 1962). *See also Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). As stated by the Supreme Court in *Butner*,

> [p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

*Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), citing *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961). *See also In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) (the extent of the debtor's estate is generally defined by nonbankruptcy law, typically state law); *Wolters Village, Ltd. v. Village Properties, Ltd. (In the Matter of Village Properties, Ltd.)*, 723 F.2d 441 (5th Cir. 1984) (state created property rights, in a bankruptcy context, will not be destroyed by implication).

Homestead rights in Texas have their origins in both constitutional and statutory provisions. Tex. Const. art. 16, § 50; Tex. Prop. Code. Ann. § 41.001. The Texas Constitution provides special protections for homestead property beyond the protections given to other types of property. *Id.* A homestead is a constitutionally created legal interest that protects a property from all but a few specifically enumerated kinds of liens that may be imposed against a homestead. *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992); *Majeski*

*v. Estate of Majeski*, 163 S.W.3d 102, 107 (Tex.App. –Austin 2005).

Homestead rights have traditionally enjoyed great protection in Texas jurisprudence. *Florey v. Estate of McConnell*, 212 S.W.3d 439, 443 (Tex.App. –Austin 2006); *Cadle Co. v. Ortiz*, 227 S.W.3d 831, 835 (Tex.App. –Corpus Christi 2007).  When interpreting provisions of Texas homestead exemptions, a court must liberally construe them to protect the homestead. *PaineWebber Inc. v. Murray*, 260 B.R. 815 (E.D. Tex. 2001); *In re Cole*, 205 B.R. 382, 384 (Bankr. E.D. Tex. 1997); *Woods v. Alvarado State Bank*, 19 S.W.2d 35, 35 (Tex. 1929).  In fact, courts must uphold and enforce the Texas homestead laws even though, in so doing, the court might unwittingly assist a debtor in wrongfully defeating his creditor.  *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502 (5th Cir. 1992) (quoting *Cocke v. Conquest*, 35 S.W.2d 673 (1931)).

Though the Bankruptcy Court acknowledged Texas homestead law, and the Fifth Circuit's directive to uphold and enforce such law, it nevertheless found that federal bankruptcy law and not Texas state law ultimately controls Mrs. Kim's homestead interest (R. 1:18).  In fact, the Bankruptcy Court found that it was the intent of Congress to override state exemption law "in this area."  (R. 1:21).  However, Texas homestead law, especially as it concerns the rights of a non-debtor, has not been preempted by federal bankruptcy law.

In addition to the impetus given by the Fifth Circuit to respect state authority in the realm of property rights, and especially in light of the overlying protections of the Fifth Amendment (discussed *infra*), Section 522(p) of the Bankruptcy Code does not preempt the Texas Constitution and statutory authority protecting a non-debtor spouse's homestead.  The United States Supreme Court has determined that federal preemption can arise in three ways: (1) when Congress expressly provides that state law is preempted, (2) when congressional

intent to exclusively occupy the field can be inferred from pervasive federal regulation, and (3) when state law actually conflicts with federal law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).

"Deference to our federalism counsels a presumption that areas of law traditionally reserved to the states, like police powers or property law, are not to be disturbed absent the 'clear and manifest purpose of Congress.'" *Davis v. Davis (In re Davis)*, 170 F.3d 475 (5th Cir.) (en banc), *cert. denied*, 528 U.S. 822, 120 S.Ct. 67, 145 L.Ed.2d 57 (1999) (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146 (1947). In *Davis,* the Fifth Circuit, in an en banc opinion, addressed whether Section 522(c) of the Bankruptcy Code preempted Texas homestead law. The facts of *Davis* involved an ex-wife attempting to seize and sell the debtor's homestead to satisfy a nondischargeable Section 523(a)(5) domestic support judgment. The *Davis* Court addressed the issue of whether Section 522(c) of the Bankruptcy Code expressly or impliedly preempted Texas homestead law and found that it did not.

First, the *Davis* Court found that there was no express preemption. The Court then addressed whether there was implied preemption. The Court first noted that Congress expressly preserved state exemptions under § 522(b), rejecting a proposal for uniform federal exemptions. *Davis,* 170 F.3d at 482; *see also* Report of the Comm'n on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, pts. I & II, at 4-503 (1973). "By expressly preserving a role for the state law in the Bankruptcy Code, it is clear that Congress has not devised a policy on federal exemptions so pervasive as to leave no room for a state to supplement bankruptcy law with respect to exemptions." *Davis*, 170 F.3d at 482. Thus, Congress did not intend to occupy the field of exemptions and that ground for preemption is negated.

The *Davis* Court then analyzed whether there was a direct conflict between Section 522(c) of the Bankruptcy Code and Texas homestead law. The *Davis* Court found that Section 522(c)(1) does not preempt state law because it does not provide a means for execution against exempt property but instead merely permits a Section 523(a)(5) creditor to proceed against property after bankruptcy based on the rights and remedies they would have had under state law if bankruptcy had not been filed. Thus, Section 522(c) did not preempt Texas homestead law prohibiting execution against exempt property, but instead preserved certain rights that might have been divested in the bankruptcy process.

In light of *Davis*, it is clear that there is no express preemption or implied preemption based on any alleged Congressional intention to "occupy the field." Additionally, there is no direct conflict between Texas law and Section 522(p) of the Bankruptcy Code because Section 522(p) contains no execution mechanism, as in *Davis*, that would conflict with the homestead provisions of the Texas Constitution and TEX. PROP. CODE § 41.001. Section 522(p), on its face, provides no means for enforcing a creditor's claimed right to force a sale of the Debtor's homestead. In the absence of an execution mechanism, Texas' enforcement mechanisms govern in bankruptcy court and Texas law does not permit seizure and sale of an exempt homestead to satisfy a judgment creditor. TEX. CIV. PRAC. & REM. CODE § 31.002; *In re Davis*, 170 F.3d 475 (5th Cir. 1999). Therefore, section 522(p) does not preempt Texas state law provisions protecting the homestead from forcible sale.

Noteworthy also is Chapter 41, subchapter A of the Texas Property Code, which defines exempt interests in land, and, more specifically, the Texas homestead. It also includes a section that seeks to protect the homestead exemption from exactly the kind of limitation Section 522(p) imposes. Section 41.008 of the Texas Property Code reads: "CONFLICT WITH

FEDERAL LAW. To the extent of any conflict between this subchapter and any federal law that imposes an upper limit on the amount, including the monetary amount or acreage amount, of homestead property a person may exempt from seizure, this subchapter prevails to the extent allowed under federal law." Tex. Prop. Code. Ann. § 41.008.

Thus, given the Fifth Circuit's directive that courts must uphold and enforce Texas homestead laws, as well as the lack of express or implied federal preemption per *Davis*, Texas state law should control any determination regarding Mrs. Kim's homestead rights.

B.      Texas State Law Vests Mrs. Kim with Homestead Rights which Should Prevent a Forced Sale of the Property or at Least for which She is Entitled to Compensation.

The United States Supreme Court has *expressly* held, "[t]he Texas homestead right is not a mere statutory entitlement, but a **vested property right**.  As the Supreme Court of Texas has put it, a spouse 'has a vested estate in the land of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.'" *United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) (internal citations omitted) (emphasis added).  Moreover, a homestead estate is treated in Texas as property for which just compensation or its equivalent must be paid in case of condemnation by the state.  *Id.*

From the time Mr. and Mrs. Kim purchased their home in 2004, and intended to claim the Property as their homestead and used such Property as their homestead, they had a homestead right, which, according to the United States Supreme Court, was a vested property right and a vested estate in the land.  Tex. Const. art. 16, § 50; Tex. Prop. Code. Ann. § 41.001-41.002; *United States v. Rodgers*, 461 U.S. 677, 686, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).  Accordingly, the Kims' homestead rights are a vested property rights.

Furthermore, under Texas law, each spouse has a separate and undivided possessory interest in the homestead which is only lost by death or abandonment and which may not be compromised either by the other spouse or by his or her heirs.  TEX. CONST. art. 16, §§ 50, 51; *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 213, 276 L.Ed.2d 236 (1983).  *See also* TEX. FAM. CODE. ANN. § 5.001 (whether the homestead is the separate property of either spouse or community property, neither spouse may sell, convey, or encumber it without the joinder of the other spouse).  "It bears emphasis that the rights accorded by the homestead laws vest independently in each spouse regardless of whether one spouse, or both, actually owns the fee interest in the homestead." *United States v. Rodgers*, 461 U.S. 677, 685, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).  Spousal homestead rights have been constitutionally guaranteed since the first constitution of the State of Texas.  *See* TEX. CONST. of 1845, art. VII, § 22.

Mrs. Kim has homestead rights that entitle her to possession exclusive of all the world except her husband.  Under Texas law, her homestead interest cannot be transferred or taken from her by any act or proceeding to which she is not a party.  For over a century's consistent caselaw, the signature of one spouse to a lien on or a conveyance of the homestead, even if separate property, may not act to the detriment of a nonsigning spouse who would benefit from the homestead right. *Geldard v. Watson*, 214 S.W.3d 202 (Tex.App.-Texarkana 2007) (citing *Zable v. Henry*, 649 S.W.2d 136 (Tex.App.-Dallas 1983)).  Dome filed an involuntary petition against Mr. Kim, for a claim that is completely unrelated to Mrs. Kim, and now Dome seeks to impair Mrs. Kim's homestead rights through the bankruptcy process.  This goes against the very core of Texas homestead law.

Nevertheless, the Bankruptcy Court found that Mrs. Kim has no separate and distinct exempt homestead interest in the property that would entitle her to compensation or to prevent

the sale of the Property (R. 1:22).  In making this finding, the Bankruptcy Court agreed with the analysis in *H.D. Smith Wholesale Drug Co. v. McCombs (In re McCombs)*, No. 07-3043, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. December 17, 2006), wherein the court found that the rights of a non-debtor spouse to manage and control were effectively eliminated, as only the debtor may exempt property that has become property of the estate. (R. 1:21-22).   However, the reasoning espoused by the *McCombs* Court in reaching this conclusion is faulty because it confuses a rule preventing spouses in a joint bankruptcy from electing exemptions from different sources (one federal and one state) with a rule which would obliterate the homestead rights of a non-debtor spouse due to a spouse's bankruptcy.  For a full discussion of *McCombs*, see *Brief of Appellant, Chong Ann Kim*, which the Debtor hereby references and incorporates, as if set forth in full herein.  The Debtor submits that the analysis in *McCombs* is flawed and contrary to controlling precedent.   Thus, to the extent the Bankruptcy Court relied upon *McCombs* in making its findings, the Memorandum Opinion and Order should be reversed.

Further supporting Mrs. Kim's rights to compensation and value of her homestead interest in the event of a forced sale is the fact that, if Mr. and Mrs. Kim had chosen to file bankruptcy jointly, any capped exemption would have been at least $273,750.00 under Section 522(m) of the Bankruptcy Code, which applies separately with respect to each joint debtor in a joint case.  *In re Fehmel*, No. 07-60831, 2008 Bankr. LEXIS 2334 (Bankr. W.D. Tex. June 17, 2008) (slip copy) (citing *In re Rasmussen*, 349 B.R. 747 (Bankr. M.D. Fla. 2006)); *In re Chouinard*, 358 B.R. 814 (Bankr. M.D. Fla. 2006); *In re Limperis*, 370 B.R. 859 (Bankr. S.D. Fla. 2007).  Thus, it is illogical, in light of Section 522(m) of the Bankruptcy Code to say that a spouse who files for bankruptcy protection and may receive a discharge of her debts is entitled to some value for her homestead rights, but a spouse who did not file for bankruptcy, who will

14

not have her debts discharged and <u>receive no benefit of the bankruptcy</u>, should be entitled to no homestead protection whatsoever.

Moreover, even if Mr. Kim were forced to sell his home to satisfy Dome's claim, Mrs. Kim's interest in the proceeds from the sale would be greater than 50%. The Supreme Court, in *Rodgers*, examined the issue of the sale of property pursuant to a federal tax statute authorizing judicial sale of certain properties to satisfy tax indebtedness where an innocent spouse had a Texas homestead estate. Although *Rodgers* is in many ways on point to the present case (dealing essentially with the interplay of federal law permitting a forced sale of Texas homestead against the innocent spouse of a delinquent taxpayer), it is important to note that the *Rodgers* case dealt with a clear "public" right of collection of federal taxes, thereby satisfying the public purpose test of the Takings Clause. Under the present facts, should a forced sale of the Property occur, there would be only a redistribution of wealth among private persons through the bankruptcy process, clearly not a public right. In that regard *Rodgers* is not completely applicable.

In *Rodgers,* although the Court found that the spouse's interest in the homestead property could be sold, they also found that the innocent spouse would have to be compensated for her vested property rights. *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132 (1983). So the question arises as to the appropriate amount to compensate Mrs. Kim in the present case providing any sale of her interest is Constitutional in the first instance (see discussion, *infra*).

The *Rodgers* Court described the practical consequences of the principles they set forth:

> For example, if we assume, *only for the sake of illustration,* that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three non-delinquent surviving or remaining spouses, aged 30, 50, and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89%, and 64%, respectively, of the

proceeds of the sale of their homes as compensation for that estate. In addition, if we assume that each of these hypothetical non-delinquent spouses also has a protected half-interest in the underlying ownership rights to the property being sold, then their total compensation would be approximately 99%, 95%, and 82%, respectively, of the proceeds from such sale.

*United States v. Rodgers*, 461 U.S. 677, 698-699 103 S.Ct. 2132 (1983). Though the *Rodgers* case was based on a tax statute, the analysis proposed by the Court has been used in the bankruptcy context. *See In re LevenHar*, 30 B.R. 976 (Bankr. E.D.N.Y. 1983). Analytically, there is no reason that the same rationale would not apply in the event of a forced sale of Mrs. Kim's homestead. Therefore, in accordance with *Rodgers*, the value of Mrs. Kim's vested property rights in her homestead would be greater than 50% of the value of the Property should a forced sale occur, and Mrs. Kim would be entitled to such compensation.

C.    <u>To the Extent the Bankruptcy Court's Memorandum Opinion and Order Impairs Mrs. Kim's Homestead Interests, it Effects a Retroactive and Unconstitutional Taking of her Vested Property Rights.</u>

In addition to Texas state law, federal law also independently protects the property rights of individuals. The Fifth Amendment states, in relevant part, as follows: "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Congress' power to make uniform bankruptcy laws is subject to the Fifth Amendment's prohibition against takings. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 98 (Bankr. E.D.N.Y. 1991) ("there is almost universal agreement that the power given to Congress by the Bankruptcy Clause may not overstep the limitations imposed by the Due Process and Takings Clauses of the Fifth Amendment.").

"Although the Fifth Amendment speaks only of a taking of private property for a public

use, it is settled law that private property could not be taken for other than public use even if just compensation were to be paid." *Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 99 (Bankr. E.D.N.Y. 1991).  Clearly, "one person's property may not be taken for the benefit of another person without justifying public purpose, even though compensation be paid." *Id.* quoting *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

Courts have recognized that the Bankruptcy Clause permits Congress to expand the availability of the bankruptcy remedy to a larger class of entities "desiring" to become "debtors in bankruptcy," to enlarge the availability of remedies by allowing voluntary as well as involuntary petitions, by developing the remedy of "compositions" or "reorganizations." The natural result of this progression was to subject the creditor body to a broader range of bankruptcy remedies.  *See* Frimet, *The Birth of Bankruptcy in the United States*, 96 Comm. L. J. 160 (1991).  "What has never been upheld, however, is the subordination of property rights of a non-creditor to the bankruptcy process; …When Congress determines that property of a third party, not a creditor or an insider of the debtor, and having nothing to do with the bankruptcy process, can be taken, affected or appropriated, wholly or partially, for the benefit of the debtor's estate or its creditors, it has gone beyond that which is permissible under the Bankruptcy Code." *Comm. Nat'l Bank and Trust Co. of New York, v. Persky (In re Persky)*, 134 B.R. 81, 97 (Bankr. E.D.N.Y. 1991).

The relief that Dome seeks, that Mrs. Kim's homestead interests be summarily eliminated with no compensation whatsoever, is not only contrary to Texas homestead law, but also violates Mrs. Kim's Fifth Amendment rights.  Even if this were a result required by the Bankruptcy Code, which the Debtor submits it is not, Congress is not permitted to enact

bankruptcy laws that run afoul of the Fifth Amendment.  Therefore, Texas homestead law must be respected and Mrs. Kim's homestead rights must be acknowledged and protected from Mr. Kim's creditors.

The elimination of Mrs. Kim's homestead interests in this case would not only be an unconstitutional taking pursuant to the Fifth Amendment, but also a retroactive taking having a severe impact upon interests acquired by Mrs. Kim prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of  2005 ("BAPCPA").  Section 522(p) of the Bankruptcy Code became effective upon the enactment of BAPCPA on April 20, 2005 and applies to bankruptcy cases filed on or after April 20, 2005.  According to its terms, Section 522(p) applies retroactively to limit interests acquired by the Debtor during the 1215-day period preceding the date of the filing of the petition.  11 U.S.C. § 522(p).  Retroactivity is generally disfavored in the law, *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 469-470, 102 L.Ed.2d 493 (1988), in accordance with "fundamental notions of justice" that have been recognized throughout history, *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855, 110 S.Ct. 1570, 1586-1587, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring).[2]  The United States Constitution expresses concern about retroactive laws through

---

[2] See also, *e.g., Dash v. Van Kleeck,* 7 Johns. 477, 503 (N.Y.1811) ("It is a principle in the *English* common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective effect"); H. Broom, Legal Maxims 24 (8th ed. 1911) ("Retrospective laws are, as a rule, of questionable policy, and contrary to the general principle that legislation by which the conduct of mankind is to be regulated ought to deal with future acts, and ought not to change the character of past transactions carried on upon the faith of the then existing law"). In his Commentaries on the Constitution, Justice Story reasoned: "Retrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact." 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891). A similar principle abounds in the laws of other nations. *See, e.g., Gustavson Drilling (1964) Ltd. v. Minister of National Revenue,* 66 D.L.R.3d 449, 462 (Can. 1975) (discussing rule that statutes should not be construed in a manner that would impair existing property rights); The French Civil Code, Preliminary Title, Art. 2, p. 2 ("Legislation only provides for the future; it has no retroactive effect") (J. Crabb transl., rev. ed. 1995); Aarnio, Statutory Interpretation in Finland 151, in Interpreting Statutes: A Comparative Study (D. MacCormick & R. Summers eds. 1991) (discussing prohibition against retroactive legislation). "Retroactive legislation," we have explained, "presents problems of unfairness that are more serious than those posed by prospective legislation, because it can

several of its provisions, including the *Ex Post Facto* and Takings Clauses.  *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994).  In *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798), the Court held that the *Ex Post Facto* Clause is directed at the retroactivity of penal legislation, while suggesting that the Takings Clause provides a similar safeguard against retrospective legislation concerning property rights.  *See also Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

In *Republic of Austria v. Altmann*, 541 U.S. 677, 693, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004), (citing *Landgraf,* 511 U.S., at 266, 269) the Supreme Court examined the rationales that support the antiretroactivity presumption, noting, "[t]he Legislature's ... responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals," and that retroactive statutes may upset settled expectations by "'tak[ing] away or impair[ing] vested rights acquired under existing laws, or creat[ing] a new obligation, impos[ing] a new duty, or attach[ing] a new disability, in respect to transactions or considerations already past.'"  The *Altmann* Court further observed that these antiretroactivity concerns are most pressing in cases involving "new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Altmann*, 541 U.S. at 693 (citing *Landgraf*, 511 U.S. at 271).  Homestead law in Texas is one such matter in which predictability and stability are paramount.

The *Altmann* Court's approach to retroactivity paralleled that advocated by Justice Scalia in his concurrence in *Landgraf:*

> "The critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs *after* the effective date of the statute is covered. Most statutes are

deprive citizens of legitimate expectations and upset settled transactions." *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992).

> meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other statutes have a different purpose and therefore a different relevant retroactivity event."

*Landgraf*, 511 U.S. at 291.  "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *Martin v. Hadix,* 527 U.S. 343, 357-358, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).  A statute has retroactive effect when it "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past...'"*Landgraf,* 511 U.S. at 269.

In *United States v. Security Industrial Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court considered a Takings Clause challenge to a Bankruptcy Code provision permitting debtors to avoid certain liens, possibly including those predating the statute's enactment. The Court therein expressed "substantial doubt whether the retroactive destruction of the appellees' liens ... comport[ed] with the Fifth Amendment," and therefore construed the statute as applying only to lien interests vesting after the legislation took effect. Similar concerns led the Court to strike down a bankruptcy provision as an unconstitutional taking where it affected substantive rights acquired before the provision was adopted.  *See also Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 601-602, 55 S.Ct. 854, 868-869, 79 L.Ed. 1593 (1935); *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

In *Louisville Joint Stock v. Radford*, 295 U.S. 555, 601-602, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), the Supreme Court held that the Frazier-Lemke Act, June 28, 1934, c. 869, 48

Stat. 1289, violated the Takings Clause.  In *Radford*, the bank held a nonpurchase-money mortgage on Radford's farm. Radford defaulted and instituted bankruptcy proceedings. The Frazier-Lemke Act, which by its terms applied only retrospectively, permitted the debtor to purchase the property for less than its fair market value. The Court held the statute was void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" its enactment. *Radford*, 295 U.S. at 590.

To the extent that the Bankruptcy Court uses Section 522(p) to eliminate the homestead interests of Mrs. Kim (R. 1:21), Section 522(p) has a retroactive effect because it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, with respect to transactions or considerations already past. Mrs. Kim's vested homestead rights, which she held as of at least 2004 are impaired by the Bankruptcy Court's employment of section 522(p), which was not enacted until 2005.  The Bankruptcy Court's application of Section 522(p)'s "reach back" 1215 day provision to cut off Mrs. Kim's rights operates retroactively to affect vested property rights acquired prior to the enactment of the provision.  On August 2004, when Mrs. Kim purchased her home, she believed that she had a vested property right in her new homestead and had no notice that it would be torn away by subsequent congressional legislation and an involuntary bankruptcy petition filed against her husband.  Like the bankruptcy provision enacted in *Louisville Joint Stock Land Bank*, Section 522(p) affects substantive rights acquired before the provision was enacted, and, as such, should similarly be struck down.

In summary, Retroactive legislation is generally disfavored in the law.  Particularly concerning to courts are new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.  Homestead rights - whether or not

21

Mrs. Kim will lose her home to her husband's judgment creditor in contravention of the Texas

Constitution - is one such matter in which predictability and stability are paramount.  Thus, for

the reasons stated *supra*, Section 522(p) should not be permitted to retroactively affect Mrs.

Kim's vested property rights.

D.     The Bankruptcy Court Erred in Finding that Mr. and Mrs. Kim Moved to Texas and
       bought an Expensive House after a Judgment was entered against Mr. Kim in
       California.

Section 522(p) of the Bankruptcy Code became effective upon the enactment of

BAPCPA on April 20, 2005.[3]  The section holds in relevant part:

> (p)(1) Except as provided in paragraph (2) of this subsection and sections 544
> and 548, as a result of electing under subsection (b)(3)(A) to exempt property
> under State or local law, a debtor may not exempt any amount of interest that
> was acquired by the debtor during the 1215-day period preceding the date of the
> filing of the petition that exceeds in the aggregate $136,875 in value in--
>
> (A) real or personal property that the debtor or a dependent of the debtor uses as
> a residence;
>
> (B) a cooperative that owns property that the debtor or a dependent of the debtor
> uses as a residence;
>
> (C) a burial plot for the debtor or a dependent of the debtor; or
>
> (D) real or personal property that the debtor or dependent of the debtor claims as
> a homestead.

11 U.S.C. § 522(p).

The stated purpose of Section 522(p) "was to prevent out of state residents from moving

to certain states in order to file for bankruptcy under more advantageous state home exemption

laws."  *In re Blair*, 334 B.R. 374 (Bankr. N.D. Tex. 2005).  "The legislative comments state

that the amended Section 522(p) restricts the "mansion loophole." H.R. REP. 109-31(I), at

---

[3] "The amendments made by sections 308, 322, and 330 shall apply with respect to cases commenced under title
11, United States Code, on or after the date of the enactment of this Act."  BAPCPA § 1501(b)(2). *Hill v. Hill*, 387
B.R. 339 (B.A.P. 1st Cir. 2008).

(2005), *reprinted in* 2005 U.S. Code Cong. & Admin. News 88, 102. Congress briefly explains: "Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their mansion loophole laws. S. 256, 109th Cong. (2005). [BAPCPA] closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim the state's homestead exemption." *Id.* at 377-378.

Mr. Kim, a Texas resident for almost 30 years, is certainly not the debtor which Congress sought to thwart with its enactment of Section 522(p). Neither Mr. nor Mrs. Kim chose to file bankruptcy. This filing was initiated by Dome as an involuntary bankruptcy against Mr. Kim. Mrs. Kim is not a debtor, period, and is certainly not the intended target of such legislation. Mr. and Mrs. Kim did not move to Texas and purchase a home to shield non-exempt funds from the reach of Mr. Kim's creditors. In fact, the evidence shows that Dome's judgment against Mr. Kim was not even entered until November, 2006, two (2) years after the Kims purchased their new home. Thus, the Bankruptcy Court erred in finding that Mr. and Mrs. Kim moved to Texas and bought an expensive house after the judgment was entered against Mr. Kim in California, and erred in finding the facts of this case to be "largely" those that prompted Congress to place the limitations on a debtor's homestead exemption in Section 522(p).

This clearly erroneous finding of fact is important, as the Bankruptcy Court appears to use it as a justification for the obliteration of Mrs. Kim's homestead rights, admitting that "[a]t first blush, this result may seem harsh." (R. 1:22-23). In addition to being an unconstitutional taking in derogation of Texas homestead law, the result of the Bankruptcy Court's

Memorandum Opinion and Order, the elimination of Mrs. Kim's homestead rights with no compensation, is "harsh" and as it appears to be partly based upon this erroneous finding of fact, should be reversed.

## CONCLUSION

As Texas state law has not been expressly or impliedly preempted under the standards set forth in *Davis*, Texas state law and not federal bankruptcy law, should control in determining Mrs. Kim's homestead rights. The vested property rights granted to Mrs. Kim by Texas State law, as further protected by the Fifth Amendment, are not subject to forced sale in Mr. Kim's bankruptcy case. However, to the extent to the Court finds that such rights are subject to a forced sale of the Property, Mrs. Kim's rights are vested property rights for which compensation must be paid. Finally, policy considerations underlying the enactment of Section 522(p) are not applicable in this case, and are not persuasive to the application of Section 522(p) to obliterate Mrs. Kim's homestead rights.

## PRAYER

Mr. Kim prays that the Court reverse the Bankruptcy Court's Memorandum Opinion and Order on Motions for Summary Judgment, and grant such other relief as is just.

Respectfully submitted,

By:  /s/ Christina W. Stephenson
        Gerrit M. Pronske
        State Bar No. 16351640
        Rakhee V. Patel
        State Bar No. 00797213
        Christina W. Stephenson
        State Bar No. 24049535
        Pronske & Patel, P.C.
        2200 Ross Ave., Ste. 5350
        Dallas, Texas 75201
        Telephone: 214.658.6500
        Facsimile: 214.658.6509
        Email: grponske@pronskepatel.com
        Email: rpatel@pronskepatel.com
        Email: cstephenson@pronskepatel.com

**COUNSEL FOR ODES HO KIM**

**CERTIFICATE OF SERVICE**

       I, the undersigned, hereby certify that, on March 2, 2010 I caused to be served the foregoing pleading upon the parties listed below via the Court's electronic transmission facilities.

Howard M. Spector
Nathan M. Johnson
Spector & Johnson, PLLC
12770 Coit Road
Banner Place, Suite 1100
Dallas, Texas 75251

Monica S. Blacker
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

        /s/ Christina W. Stephenson
        Christina W. Stephenson