Civil Action No. 3:09-CV-1082-N (Lead)
Other Civil Action Numbers:
3:09-CV-1083-N
3:09-CV-1187-N
ECF

---

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

---

CHONG ANN KIM

*Appellant*

v.

ODES HO KIM

Appellee,

and

DOME ENTERTAINMENT CENTER, INC.,

*Appellee / Cross-Appellant*

---

Appeal from the United States Bankruptcy Court
For the Northern District of Texas, Dallas Division
Bankruptcy Case No. 07-36293-HDH-11
Adversary Proceeding No. 08-03440

---

**BRIEF FOR APPELLEE / CROSS-APPELLANT DOME ENTERTAINMENT CENTER, INC.**

---

Howard Marc Spector
Nathan M. Johnson
SPECTOR & JOHNSON, PLLC
12770 Coit Road, Ste. 1100
Dallas, Texas 75251
Tel: (214) 365-5377
Fax:  (214) 237-3380

**ATTORNEYS FOR DOME ENTERTAINMENT
CENTER, INC.**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case.  These representations are made in order that the judge of this Court may evaluate possible disqualification or recusal.

A.      **Parties:**

Appellant:                  Chong Ann Kim

Cross-Appellant/            Dome Entertainment Center, Inc.
Appellee:

Appellee:                   Odes Ho Kim

B.      **Attorneys:**

Appellee:                   Gerrit M. Pronske
                            Rakhee V. Patel
                            PRONSKE & PATEL, P.C.
                            2200 Ross Ave., Ste. 5350
                            Dallas, Texas 75201
                            Telephone:  (214) 658-6500

Appellee:                   Howard Marc Spector
                            Nathan M. Johnson
                            SPECTOR & JOHNSON, PLLC
                            12770 Coit Road, Ste. 1100
                            Dallas, Texas 75251
                            Telephone: (214) 365-5377

Appellant:                  Charles L. Perry
                            Monica S. Blacker
                            ANDREWS KURTH, LLP
                            1717 Main St., Ste. 3700
                            Dallas, Texas  75201
                            Telephone: (214) 659-4681

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................................ ii

TABLE OF CONTENTS............................................................................................ iv

TABLE OF AUTHORITIES ........................................................................................v

ISSUE PRESENTED...................................................................................................1

STATEMENT OF THE CASE......................................................................................2

STATEMENT OF FACTS ...........................................................................................2

SUMMARY OF ARGUMENT ....................................................................................4

ARGUMENT ...............................................................................................................6

CONCLUSION...........................................................................................................24

PRAYER.....................................................................................................................24

CERTIFICATE OF SERVICE ...................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. United States,* 364 U.S. 40, 80 S. Ct. 1563, 4
L. Ed. 2d 1554 (1960) .......................................................................................17

*Eastern Enter. v. Apfel,* 524 U.S. 498, 118 S. Ct. 2131, 141
L. Ed. 2d 451 (1978) .........................................................................................17

*In re Bartlett*, 168 B.R. 488 (Bankr. D.N.H. 1994) ........................................22

*In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002)..............................19, 20, 21

*H.D. Smith Wholesale Drug Co. v. McCombs, et al. (In re
McCombs)*, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. 2007) ......................6

*Heggen v. Pemelton*, 836 S.W.2d 145 148 (Tex. 1992) ...................................11

*Landgraf v. USI Film Products, et al.*, 511 U.S. 244; 114 S.
Ct. 1483; 128 L. Ed. 2d 229 (1994) ............................................................17, 23

*In re Lang,* 191 B.R. 268 (Bankr. D. Puerto Rico 1995)....................6, 7, 8, 12

*Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555,
589, 55 S. Ct. 854, 79 L. Ed. 1593 (1935)* .....................................................18

*McAndrews v. Fleet Bank,* 989 F.2d 13 (1st Cir. 1993) .................................22

*In re McDole (Keybank Nat'l Assoc. v. McDole),* 2008 U.S.
Dist. LEXIS 80531 (D. Wash. 2008).........................................................12, 21

*In re Presto*, 376 B.R. 554 (Bankr. S.D. Tex. 2007) .......................................10

*Owen v. Owen,* 500 U.S. 305, 111 S. Ct. 1833, 114 L. Ed.
2d 350 (1991)...................................................................................................8, 12

*Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998)....................18

*In re Rogers,* 513 F.3d 212 (5th Cir. 2008) ....................................................11

*Shirkey v. Leake*, 715 F.2d 859 (4th Cir. 1983) .............................................6, 7

*In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008)....................................21

*United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132 (1983) ...............11, 13, 14, 15

*United States v. Security Industrial Bank et al.,* 459 U.S. 70;
103 S. Ct. 407; 74 L. Ed. 2d 235 (1982)...........................................19, 20, 21

*In re Walsh*, 359 B.R. 389 (Bankr. D. Mass. 2007) ................................................................13, 15

*In re Williams*, 283 F.3d 686 (5th Cir. 2002)..............................................................................19

## **Statutes**

11 U.S.C. § 522(f)...........................................................................................................21, 22, 23

11 U.S.C. § 522(b)(3) ......................................................................................2, 9, 10, 13, 17, 23

11 U.S.C. § 522(p) .........................................1, 2, 4, 5, 6, 10, 13, 14, 15, 17,18, 19, 20, 22, 23, 24

11 U.S.C. § 541(a) ........................................................................6, 7, 10, 11, 12, 13, 14, 19

12 U.S.C. §§ 3331 *et seq.* (FIRREA) (1989).........................................................................22, 23

U.S. CONST. amend. V.......................................................................................................18, 27

## **Other Authorities**

Hon. William H. Brown, *Political and Ethical Considerations
of Exemption Limitations: The "Opt-Out" as Child of the First
and Parent of the Second* 71 AM BANKR. L.J. 149 (1997) ............................................................8

Julia Patterson Forrester, *Bankruptcy Takings*, 51 FLA.
L. REV. 851 (December 1999) ...............................................................................................18, 19

Lawrence Ponoroff, *Exemption Limitations: A Tale of Two
Solutions*, 71 AM BANKR. L.J. 221 (1997).....................................................................................8

Ryan P. Rivera, *State Homestead Exemptions And Their
Effect On Federal Bankruptcy Laws,* REAL PROPERTY,
PROBATE AND TRUST JOURNAL (Spring 2004) .................................................................8

*4 Collier on Bankruptcy* P 541.15 (15th Ed. 1995) ......................................................................7

## **Other Materials**

Report of the National Bankruptcy Review Commission,
October 20, 1997.......................................................................................................................7

## RECORD REFERENCES

The Record on Appeal consists of Volumes 1, 3, 4, and 5, and are cited herein as

(R. [volume #]:[page]).

## ISSUE PRESENTED

Whether a non-debtor spouse's pre-petition state law homestead rights are subject to and

limited by section 522(p) of the Bankruptcy Code.

## STATEMENT OF THE CASE

Nature of the Case:            This appeal arises from an Adversary Proceeding filed in the
                               bankruptcy case of Appellee and Debtor Odes Ho Kim
                               ("**Odes Kim**"or "**Mr. Kim**"). On December 21, 2007,
                               Appellee Dome Entertainment Center, Inc. ("**Dome**") filed an
                               involuntary bankruptcy petition against Odes Kim (R. 3:77).
                               After the Bankruptcy Court ordered that Odes Kim's interest
                               in his residence, which he shares with his wife, Chong Ann
                               Kim ("**Ann Kim**" or "**Mrs. Kim**"), was limited to the
                               monetary interest provided by section 522(p) of the
                               Bankruptcy Code (R 3:326), Mr. Kim filed an Adversary
                               Proceeding seeking declaratory judgment to determine the
                               extent of his wife's interest in the Property (R 4:494). Dome
                               intervened in the Adversary Proceeding, and both Dome and
                               Mrs. Kim filed motions for summary judgment (R 4:494).

Trial Court's Disposition      The Bankruptcy Court entered an *Order* and *Memorandum
                               Opinion on Motions for Summary Judgment* denying Ann
                               Kim's motion for summary judgment and granting in part and
                               denying in part Dome's motion for summary judgment.
                               (R.4:492-508).

## STATEMENT OF FACTS

This bankruptcy case was commenced when Dome filed an involuntary petition for relief against Mr. Kim on December 21, 2007 (the "**Petition Date**") (R. 3:77). Following a trial on the involuntary petition, the Court entered an order for relief under Chapter 7 of the Bankruptcy Code on April 22, 2008 (R. 3:78). Kim subsequently converted the case to Chapter 11, and now operates as a debtor-in-possession.

In his bankruptcy schedules, Mr. Kim listed his residence in Irving, Texas (the "**Property**") as exempt pursuant to Texas homestead law, as purportedly incorporated by Section 522(b)(3) of Title 11 of the United States Code (the "**Bankruptcy Code**", or simply the "**Code**"). Mr. Kim had purchased the Property and took title in his name alone (R 3:215), fewer than 1215 days before the Petition Date (R 3:215).

Dome objected to Mr. Kim's claim of an unlimited homestead exemption on the basis that Bankruptcy Code section 522(p) limited the Debtor's exemption with respect to the Property to a monetized interest in the value of the Property. By order dated October 17, 2008 (the "**Exemption Order**"), the Bankruptcy Court granted Dome's objection, and ruled that the Debtor's exemption was limited to an interest in the Property not to exceed $136,875 (R 3:326). Further, the Bankruptcy Court expressly overruled the Debtor's challenge to the constitutionality and applicability of section 522(p) with respect to the Property (R 3:326). The Exemption Order omitted any determination of the rights that the Debtor's wife, Mrs. Kim, may or may not have in the Property (R 3:326).

Following entry of the Exemption Order, the Debtor filed an adversary proceeding seeking (the "**Adversary Proceeding**") a declaratory judgment which would determine (i) whether the Debtor's wife Mrs. Kim retains a homestead interest in the Property; (ii) whether, if

Mrs. Kim does retain a homestead interest, that interest precludes the Debtor and his bankruptcy estate from forcing a sale of the Property; and (iii) if Mrs. Kim retains a homestead interest but that interest does not preclude sale of the Property, whether Mrs. Kim is entitled to remuneration from the bankruptcy estate, and, if so, in what amount (R. 4:419-420).

Dome intervened by agreement of the parties, seeking declaratory judgment that (in summary) (a) any interest Mrs. Kim held in the Property immediately prior to the Petition Date became property of the estate on the Petition Date by operation of 11 U.S.C § 541, (b) that Mrs. Kim is not entitled to a separate exemption in the Property, (c) that the Property may be sold pursuant to 11 U.S.C § 363(b), and that (d) Mrs. Kim's interest in the Property – including any rights to "compensation" from the sale of the Property – is limited to her community interest (as such interest is defined by state law) in the Debtor's exemption with respect to the Property (as such exemption is defined by the Exemption Order), and not an interest in the Property itself.

Both Mrs. Kim and Dome filed motions for summary judgment (R. 3:48-53, 98-103).On May 19, 2009 the Bankruptcy Court entered a *Memorandum Opinion* and *Order* (R. 4:490-508) denying Mrs. Kim's motion and granting in part Dome's motion.[1] Mr. and Mrs. Kim appealed the Memorandum Opinion and Order on May 29, 2009 (R. 4:509-511, 519-521), and Dome cross-appealed on June 8, 2009 (R. 1:7). On November 19, 2009, the District Court granted the parties' Motions for Leave to Appeal (R. 1:43-44). On January 15, 2010, the District Court entered an order consolidating the three appeals of the Memorandum Opinion and Order.

---

[1] The Memorandum Opinion granted Dome's motion as to all points of law regarding Mrs. Kim's exemption rights, but left open the question of whether, as a factual matter, Ann Kim owned a portion of the Property as her separate property.

## SUMMARY OF ARGUMENT

All of a non-debtor spouse's (*e.g.*, Mrs. Kim's) interest in joint management community property becomes property of the debtor-spouse's bankruptcy estate upon the filing of the bankruptcy case. Once made part of the bankruptcy estate, interests in property may only be withdrawn by the debtor, and only pursuant to the exemptions provided by the Bankruptcy Code. A debtor has no state law rights to exempt property from a bankruptcy estate; federal bankruptcy law preempts state law on the matter of exemptions. To the extent the Bankruptcy Code permits a debtor to exempt property in accordance with the exemption laws of the state of his residence, it qualifies such rights by making them subject to the limitations contained in, *inter alia*, section 522(p).

The Code does not provide a separate exemption to a non-debtor spouse. To the extent state law might otherwise afford a non-debtor spouse a separate economic interest in homestead property, such law conflicts with federal law, and is preempted. Accordingly, a non-debtor spouse retains no economic interest in the subject property pursuant to which she might be entitled to compensation upon sale of the property by the trustee. Similarly, to the extent state law might otherwise afford a non-debtor spouse a separate possessory right to homestead property, such law conflicts with federal law and is likewise preempted. Section 522(p) of the Code was intended to close the "mansion loophole". If a non-debtor spouse can demand compensation for the residence, or retain possession indefinitely, the loophole remains open.

The Takings Clause has no relevance to Bankruptcy Code section 522(p), as that section does not take property from either the debtor or a non-debtor spouse. Nor does the 1215-day reach back of section 522(p) constitute a retroactive taking of a debtor's property interests. Exemptions are determined at the inception of the bankruptcy case, not when a debtor acquires

4

an interest in property. With respect to the Debtor and the Property, section 522(p) was in effect when the Debtor was placed in bankruptcy, and on that date – not before – the Debtor became entitled to exemptions as then defined by the Bankruptcy Code. No individual has a Constitutional right to purchase property with the expectation that, were she or her spouse to become a debtor in bankruptcy one day, the Bankruptcy Code will afford her the same exemptions with respect to that property as it would have had she or her spouse filed for bankruptcy on the day of purchase.

**ARGUMENT**

As general observation, Mrs. Kim's position amounts to an attack on the very mechanism of the Code for the creation and disposition of a bankruptcy estate. It challenges the definition estate property as provided in Section 541, the scope of the debtor's exemptions under Section 522, and the rights and powers of a trustee to dispose of the property pursuant to Section 363. Mrs. Kim would have the Court invalidate each of these sections insofar as they affect the state law interests of non-debtor spouse in community property.

I. **SECTIONS 541(a) AND 522(p) OF THE BANKRUPTCY CODE**

   A. *The filing of the involuntary petition created a bankruptcy estate, which included all of the Debtor's property.*

Dome's involuntary petition against the Debtor triggered section 541 of Bankruptcy Code. *11 U.S.C. § 541(a)* ("the commencement of a case under section 301, 302, or 303 of this title creates an estate."). The estate comprises all property described in Code section 541(a)(1) – (a)(7), which includes, *inter alia*, all the debtor's separate property and all sole and joint managed community property. *11 U.S.C. § 541(a)(1), (a)(2); In re Lang*, 191 B.R. 268, 271 (Bankr. D. Puerto Rico 1995).

   B. *Both a debtor's and his non-debtor spouse's homestead rights in community property are extinguished upon creation of the bankruptcy estate.*

Where one spouse files bankruptcy in a community property state, "[a]ll interests of the debtor *and the debtor's spouse* in community property" become property of the estate. *11 U.S.C. § 541(a)(1), (2)* (emphasis added). All interest in and rights to community property that existed prior to the bankruptcy filing, as such rights were defined under applicable state law, cease to exist upon creation of the bankruptcy estate. *See H.D. Smith Wholesale Drug Co. v. McCombs, et al. (In re McCombs)*, 2007 Bankr. LEXIS 4264 at *25 (Bankr. S.D. Tex. 2007) (finding that

6

debtor's spouse's community property interest in homestead property became property of the estate pursuant to operation of section 541(a)(2), and that, moreover, spouse was not entitled to any separate exemption – homestead or other); *In re Lang*, 191 B.R. 268, 271 (Bankr. D. Puerto Rico 1995) (where one spouse files bankruptcy in Puerto Rico, all that debtor's property as well as the community property becomes property of the estate by operation of section 541(a)(2)(A)); see also *4 Collier on Bankruptcy* P 541.15 (15th Ed. 1995) ("one necessary effect of Section 541(a)(2) is to terminate the right of the non-debtor spouse to manage and control community property").

There is no ambiguity here; that Congress intended the community property rights of both debtor and non-debtor spouses to be terminated by operation of section 541(a) is plain from the text of the statute. This intent and effect is confirmed by the language and operation of section 363(i), which concerns the trustee's power to sell such property:

> Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, *or of property of the estate that **was** community property of the debtor and the debtor's spouse immediately before the commencement of the case*, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

*11 U.S.C. § 363(i)* (emphasis added).

That which "was", "is" no more.

### C.      *A debtor may remove property from the estate by exercise of exemption rights, but the Bankruptcy Code, not state law, defines those rights.*

At the moment of filing, therefore, neither the debtor nor the non-debtor spouse has an interest in (*inter alia*) jointly managed community property, including property which may otherwise have been subject to state law exemptions. A debtor (and only a debtor; see discussion *infra*) re-acquires interests in property only by grace of the Bankruptcy Code, and only upon his

7

election to invoke the exemptions provided under Code section 522. *See Shirkey v. Leake*, 715

F.2d 859, 864 (4th Cir. 1983); *see also Owen v. Owen,* 500 U.S. 305, 306, 111 S. Ct. 1833, 114

L. Ed. 2d 350 (1991)); *In re Lang*, 191 B.R. 268, 271 (Bankr. D. Puerto Rico 1995) (an

exemption is an interest withdrawn from the estate).

      As explained by the Fourth Circuit in *Shirkey*,

> "The 'line of cleavage' that separates exempt from non-exempt
> property no longer is drawn at the inception of the case but instead
> at a time much later in the bankruptcy proceedings. . . . That is,
> exempt property becomes property of the estate on the petition
> date, and regains its exempt status only upon the debtor's act of
> invoking exemptions pursuant to 11 U.S.C. § 522.

715 F.2d at 864.

      A debtor does not enter a bankruptcy case with a set of exemptions subject to which and

around which the Bankruptcy Code must operate; rather, Congress has defined in the Bankruptcy

Code the exemptions to which a debtor is entitled, and it is section 522 itself which provides a

Debtor with exemptions, either by reference to state law or otherwise.[2]

---

[2] Congress in fact could have specified a set of exemptions completely independent of state law, or it could have provided no exemptions at all. This is borne out historically. The Bankruptcy Acts of 1800 and 1841 provided federal exemptions for debtors but did not recognize state exemptions. *See* Rivera, *State Homestead Exemptions and Their Effect On Federal Bankruptcy Laws,* REAL PROPERTY, PROBATE AND TRUST JOURNAL (Spring 2004) at fn. 162-166. Because a fresh start in bankruptcy is a matter of federal, not state concern, in the years leading up to the enactment of BAPCPA, many authorities argued that BAPCPA should adopt a uniform set of federal exemptions, without reference to state law. *See, e.g.*, Lawrence Ponoroff, *Exemption Limitations: A Tale of Two Solutions*, 71 AM BANKR. L.J. 221 (1997); Hon. William H. Brown, *Political and Ethical Considerations of Exemption Limitations: The "Opt-Out" as Child of the First and Parent of the Second*, 71 AM BANKR. L.J. 149 (1997). Indeed, the *Report of the National Bankruptcy Review Commission, October 20, 1997*, recommended the <u>elimination</u> of state law property exemptions in favor a uniform set of federal exemptions. The Report states:

> Chapter 1: Consumer Bankruptcy - Property Exemptions
>
> 1.2.1   Elimination of Opt Out
>
> > A consumer debtor who has filed a petition for relief under the Bankruptcy Code should be
> > allowed to exempt property as provided in section 522 of the Code. Subsection (b)(1) and (2) of
> > section 522 should be repealed.
>
> 1.2.2   Homestead Property
>
> > The debtor should be able to exempt the debtor's aggregate interest as a fee owner, a joint tenant,
> > or a tenant by the entirety, in real property or personal property that the debtor or a dependent of

Conventionally, bankruptcy practitioners refer to exemptions using the shorthand of either "federal law" or "state law" exemption elections. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**"), this was sufficient to convey the idea that a debtor may elect between two separate exemption schemes because (again, prior to BAPCPA) Congress had chosen to give debtors the choice between importing the exemptions available under state law virtually *in toto* into their bankruptcy case, or selecting the alternate (*i.e.*, federal) exemption set. Before BAPCPA, if a debtor opted to import the state exemptions into his bankruptcy, Congress' decision to allow that option meant that there were few, if any, differences between property which could be reached by creditors under state law collection methods and property which would be available for distribution by a bankruptcy trustee.

BAPCPA marked a sea change with respect to the incorporation of state exemption laws into the Bankruptcy Code. No longer do the "Texas exemptions" (or those of any other state), operate unaffected within the Bankruptcy Code. Now, the Bankruptcy Code provides a new choice – a debtor residing in Texas can still elect the "federal" exemptions provided in section 522(d), or he can elect the "Texas" exemptions as modified by other provisions of section 522. This is made clear in section 522(b)(3), which begins with the qualification that all exemptions made available to the debtor by the Code's reference to state law are "*subject to the limitations of subsections (o) and (p)*" of section 522. *11 U.S.C. § 522(b)(3)(A)* [emphasis added].

The effect of this statutory scheme is clear: Bankruptcy Code Section 541 extinguishes all a debtor's interests in property by transferring them to the bankruptcy estate.

the debtor uses as a residence in the amount determined by the laws of the state in which the debtor resides, but not less than $20,000 and not more than $100,000. Subsection (m) of section 522 should be revised to reflect that all exemptions except for the homestead exemption shall apply separately to each debtor in a joint case.

As noted by Mr. and Mrs. Kim, section 522(p) was introduced by the 2005 BAPCPA amendments to the Bankruptcy Code in order to close the so-called mansion "loophole", whereby a debtor might avail himself of an unlimited state homestead exemption to shield his wealth from creditors. Section 522(p) placed a restriction on the scope of the exemption rights awarded under 522(b)(3) (*i.e.*, exemptions defined by reference to state law) in the case of debtors who purchased homestead property with 1215 days of the petition date. *See In re Presto*, 376 B.R. 554, 600-01 (Bankr. S.D. Tex. 2007).

Because Mr. Kim purchased the property within 1215 days of the Petition Date, the Bankruptcy Court held that section 522(p)limits his homestead exemption to a monetary interest in the value of the Property ($136,875).

**D.**      *A non-debtor spouse does not retain a homestead interest distinct from that retained by the debtor pursuant to the exemptions under the Bankruptcy Code.*

The Bankruptcy Code does not permit a debtor's non-filing spouse to exempt property from the estate. Only the debtor is entitled to claim exemptions under section 522. *Duncan v. Zubrod* (*In re Duncan*), 294 B.R. 339 (10th Cir. 2003). Moreover, the Code does not afford to a non-filing spouse a separate exemption allowance with respect to community property. *McCombs*, 2007 Bankr. LEXIS 4264 (Bankr. S.D. Tex. 2007) (citing a string of authority interpreting 522(b)).

Mrs. Kim argues nevertheless, that notwithstanding the operation of sections 541(a) and 522(p), she retains homestead exemption rights under Texas law. She and Mr. Kim maintain that Texas homestead laws vest her with rights – separate and apart from any "ownership" interest in the Property that might be transferred to the estate by operation of Code section 541(a) – that the Bankruptcy Code does not reach; to wit: either (a) an economic interest in the Property, for which she must be compensated if the Property is sold by the trustee, or (b) a possessory interest,

akin to a life estate, which would prevent any sale of the Property by the trustee.

As a preliminary observation, section 541(a) does not provide for distinct treatment of a debtor and the non-debtor spouse with respect to community property. The statute employs the same language for the non-debtor spouse as it does for the debtor, *i.e.*, all "interests" [of the debtor's spouse] in "community property" become the estate's property. If the Court agrees that all interests of the Debtor in community property, including the Debtor's homestead interest, were absorbed into the estate upon filing, section 541(a) provides no basis for a contrary holding with regard to the interests of the Debtor's non-filing spouse in community property. If the Debtor's homestead right in community property is extinguished, so must be the homestead rights of the non-debtor spouse.

Mrs. Kim's theory misconstrues the nature of the Texas homestead interest. "Under Texas law, '[t]he homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homestead. This interest … gives protective legal security rather than vested economic rights.'" *In re Rogers*, 513 F.3d 212, 224 (5th Cir. 2008), (quoting *Heggen v. Pemelton*, 836 S.W.2d 145 148 (Tex. 1992)). [Quoted by the Bankruptcy Court at R. 4:502]. Thus even assuming some cognizable persisting homestead right in favor of a non-debtor spouse, it provides no economic interest and hence no basis for a claim of compensation for lost value of right of possession.

Language cited by Mr. Kim from (the confusingly similarly-styled) *United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132 (1983), referring to a "vested property right" in connection with Texas homestead law, does not alter this analysis. Whatever "property rights" may vest as a result of the Texas homestead laws, they are not 'vested economic rights". Rather, because *Rodgers* is a tax case that did not involve the absorption of a non-debtor spouse's

community property into a bankruptcy estate, the innocent spouse still had an economic interest

in the property, to which the homestead rights could attach and be considered property rights.

But in a bankruptcy case the underlying economic interest is transferred to the bankruptcy estate.

There remains no free-floating Texas homestead "property right" which the former property

owner might assert as the basis for economic compensation. When the economic interest in the

property is gone, so too are the associated homestead rights.

    **E.**    ***The Bankruptcy Code preempts state law exemption rights with respect to a non-filing spouse's interests in community property.***

Whereas prepetition property rights are defined by state law, bankruptcy exemptions

(pursuant to which the debtor may obtain post-petition property rights) are defined by federal

bankruptcy law. *Owen v. Owen*, 500 U.S. 305, 306, 111 S. Ct. 1833, 114 L. Ed. 2d 350

(1991)).To the extent Mrs. Kim argues that Texas homestead law permits her to retain an

economic interest in what otherwise is transferred to the bankruptcy estate by section 541(a) of

the Bankruptcy Code, such a reading places Texas law in conflict with federal law, and to such

extent Texas law is preempted. As the Bankruptcy Court observed, it was the intent of Congress

to override state exemption law with respect to homestead interests (R. 4:501). *See, e.g.,* HR

Rep. 109-31(I), 109th Cong. 1st Sess. 2005 n.72, 2005 U.S.C.C.A.N. 88 (2005) ("In effect, this

provision overrides state exemption law authorizing a homestead exemption in excess of this

amount and allows such law to control if it authorizes a homestead exemption in a lesser

amount"). S*ee also In re McDole*, 2008 U.S. Dist. LEXIS 80531 (D. Wash. 2008) ("although

states are free to define their exemptions, conflicting state exemption limitations may not

stand.") (citing *Owen*, 500 U.S. at 306);  *In re Lang*, 191 B.R. at 272-74 (where state law

provided that community property could not be sold without the written consent of both spouses,

the statute was in conflict with federal bankruptcy law and was preempted).

Congress has expressly preempted state homestead law in numerous sections of the Code, all germane here. Section 541(a) expressly transforms community property (as defined by state law) into property of the estate; section 522(b)(3) – the "state law" exemptions option – expressly conditions all such exemptions of the *modifications* contained in paragraphs (o) and (p); paragraph 522(p) expressly defines an exemption otherwise available under state law to a specific monetary interest in the value of the property, which otherwise remains property of the estate; and section 363(i) permits a trustee to sell what *was* community property (as defined by state law) subject only to a non-debtor spouse's right to purchase the property at the price established by the sale.

In attempting to avoid the consequence of this fundamental rule, the Kims call upon several inapposite cases. First, Mrs. Kim cites *In re Walsh*, 359 B.R. 389 (Bankr. D. Mass. 2007) for the proposition that a non-debtor spouse's homestead rights survive the debtor spouse's bankruptcy filing. But in *Walsh* the non-debtor spouse was able to retain his ownership interest in the homestead property, and along with it his corresponding homestead rights, because the applicable state law of Massachusetts did not involve community property ownership. Instead, the spouses owned the homestead property as tenants-by-the-entirety. The Bankruptcy Code treats tenancy-by-the-entirety property differently from community property, with significantly different results: section 541(a) does not absorb a non-debtor's interest in tenancy-by-the-entirety property into the bankruptcy estate.

Mrs. Kim's reliance on *United States v. Rodgers*, 461 U.S. 677, 103 S. Ct. 2132 (1983), as support for her claim that she is entitled to receive the monetary value of a life estate in the Property, is similarly misplaced. *Rodgers*, like *Walsh*, does not involve absorption into the bankruptcy estate of the non-debtor spouse's interest in property pursuant to Bankruptcy Code

section 541(a). *Rodgers* is a tax case that does not even involve a bankruptcy estate. It is therefore completely inapposite. *See, e.g., McCombs*, 2007 Bankr. LEXIS 4264 at n. 11 ("*Rodgers* deals exclusively with the Internal Revenue Code and has no application in this Adversary Proceeding.").

Next, Mrs. Kim attempts to draw an analogy between Bankruptcy Code sections 522(c)(1) – which in *Davis v. Davis (In re Davis)*, 170 F.3d 475 (5th Cir.), *cert. denied*, 528 U.S. 822 (1999) the Fifth Circuit held does not preempt state homestead law – and 522(p). The analogy is inapt. Section 522(c)(1) does not preempt state homestead law because it is concerned with rights under the Bankruptcy Code, not under state law. Section 522(c)(1) simply clarifies that property which a debtor withdraws from the estate pursuant to "state law" exemptions (as they existed, unmodified, prior to the enactment of section 522(p)) remains liable for certain nondischargeable pre-petition debts notwithstanding the bankruptcy discharge. As the *Davis* court explained, after the bankruptcy case a creditor with a claim for a nondischargeable debt may seek recourse against the exempted property *subject to the same state law rights and limitations applicable to the creditor in the absence of a bankruptcy case.* Thus, the *Davis* court rejected the argument that 522(c) preempts Texas homestead law, because 522(c) does not provide for a means for a creditor to *execute* against exempted property where state law exemptions otherwise prevent execution; in other words, it leaves state law exemptions unmodified.

This is completely distinct from section 522(p), which unequivocally defines the scope of a debtor's homestead exemption, thereby directly conflicting with state law (as discussed *supra*). Moreover, there are multiple "execution mechanisms" by which to implement the limitation imposed by section 522(p) on state homestead exemptions. By limiting the homestead exemption

14

which the Debtor can claim to $136,875, effectively monetizing a debtor's interest in his residence, section 522(p) permits a trustee or debtor-in-possession to sell property of the estate pursuant to section 363, free and clear of any interest in the property held by an entity other than the debtor – including the debtor's spouse.[3] Further, if the property is not sold it must be distributed in accordance with section 726, or administered pursuant to a plan of reorganization which meets the requirements of sections 1123, *et seq.*

*Davis*, therefore, like *Rodgers* and *Walsh*, is inapposite.

### F.      *Application of 522(p) does not violate principles of equity or policy.*

If the law were to operate as Mrs. Kim argues, section 522(p)'s intended purpose of closing the mansion loophole could be defeated by any married debtor who files an individual rather than a joint bankruptcy case. A married couple could plow an unlimited sum of money into a residence, file bankruptcy in the name of only one spouse, and effectively shield (a) the entire investment from the reach of creditors by claiming a continuing possessory right on the part of the non-filing spouse, and/or (b) the community half of the investment by claiming a separate economic right. There is no legal or policy basis for such a result.

## II.   SECTIONS 544(a) AND 541(d) OF THE BANKRUPTCY CODE

*Any separate property interest Mrs. Kim may have held in  the property was cut off by the estate's strong-arm power under Bankruptcy Code section 544(a).[4]*

The estate holds "strong arm powers" under Section 544(a)(3). Under this section, a bankruptcy estate enjoys all the rights and powers of a bona fide purchaser as defined by state law. Such rights are superior to any alleged separate property interest of Mrs. Kim.

---

[3] Subject only to section 363(i), which grants a right of first refusal to the non-debtor spouse.

[4] Dome disputes that Mrs. Kim held any separate property interest in the Property. Meanwhile Dome's understanding is that pursuant to a settlement agreement between the parties to this appeal, the issue of Mrs. Kim's alleged separate property interest is moot. Dome submits this section only for consideration in the unlikely event that the Court may find it to be relevant.

The Bankruptcy Court agreed with Dome that under Texas law the rights of a bona fide purchaser would cut off the rights Mrs. Kim may have had in the property (pursuant to a resulting trust). The Bankruptcy Court held, however, that federal law concerning the interplay between Bankruptcy Code sections 541(d) and 544(a) preempted Texas law on the subject, and that section 541(d) trumps the trustee's powers under section 544(a). The Bankruptcy Court concluded therefore that a fact issue remained as to whether Mrs. Kim held a separate property interest in the property. Dome maintains that the prior case law which elevates 541(d) over 544(a) is distinguishable, and that in the present instance the trustee's powers under section 544(a) do in fact apply.

Section 541(d) incorporates and protects the equitable rights of third parties, but only where state law would also protect those rights. *In re Haber Oil*, 12 F.3d 435, 436 (5th Cir. 1994). Section 544(a)(3), meanwhile, grants a bankruptcy estate the state law rights and powers of a bona fide purchaser ("**BFP**") with respect to real property. Thus, the question is whether Texas law would hold that a spouse's separate property interest in real estate acquired during a marriage is superior to the rights of a BFP in that property.

After a diligent search, counsel for Dome has determined that virtually every Fifth Circuit case in which the courts elevate a creditor's rights under section 541(d) over the trustee's rights in section 544(a) involves a constructive trust, imposed on account of fraud by the debtor, and over assets in which the debtor had no equitable interest. These cases are consistent with the position that section 541(d) holds separate from the bankruptcy estate only those interests which, under state law, a third party may hold in property nominally titled in the name of the debtor. None of the cases involves an unrecorded separate property interest in real property.

In summary, because under Texas law Ann Kim's alleged separate property interest

would not be superior to the interests of a bona fide purchaser, it would not be covered by section 541(d). Accordingly, the rights of the bankruptcy estate under Bankruptcy Code section 544(a)(3) prevail, and any alleged separate property interest of Ann Kim is property of the estate.

## III. SECTION 522(p) AND THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT[5]

### A.     *Section 522(p) does not take property from a debtor.*

The Takings Clause of the Fifth Amendment prohibits the taking of private property for public use without just compensation. *U.S. CONST., amend. V*; *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998)). In order to evaluate the Debtor's Takings Clause challenge to section 522(p), it is important to distinguish between the concepts of state law property rights (including, perhaps, a right to a homestead exemption) which a debtor enjoys prepetition, and federal bankruptcy law exemption rights, which a debtor enjoys post-petition. As explained *supra*, section 522(p) does not take private property from a debtor, it merely restricts the value of rights awarded the debtor under 522(b)(3). It therefore cannot violate the Takings Clause.

### B.     *Section 522(p) does not impose a public burden on select individuals.*

At a broader level, Bankruptcy Code section 522(p) is simply not the type of law that implicates the Takings Clause. The purpose of the Takings Clause is "to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Eastern Enter. v. Apfel,* 118 S. Ct. 2131, 2146 (1978) (*quoting Armstrong  v. United States*, 364 U.S. 40, 49 (1960). *See also Landgraf  v. USI Film Products*, 511 U.S. 244, 266, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) (the Takings Clause prohibits government actors from taking private persons' vested property rights without "just compensation" and for a "public use"); *see generally*, Julia Patterson Forrester, *Bankruptcy*

---

[5] Neither Mrs. Kim nor Mr. Kim presented their Takings Clause argument to the bankruptcy court in the Adversary Proceeding. This argument is therefore waived. Dome nevertheless submits this rebuttal, which applies equally with respect to the interests of a debtor and to a non-debtor spouse.

*Takings*, 51 F\ʟᴀ. L. Rᴇᴠ. 851 (December 1999). Bankruptcy Code section 522(p)'s limitation on a debtor's interest in homestead property imposes no public burden on the debtor, nor any public use for which the debtor's property is "taken". Instead, section 522(p) sets the threshold above which a debtor's equity in homestead property will be made available to satisfy the debtor's debts. Such action is a fundamental underlying principle of the bankruptcy process, and has never been considered a taking.

In light of the foregoing observations, it is not surprising that, while there are many cases involving section 522 and the Takings Clause of the Fifth Amendment, not one of them involves section 522(p). More significantly, not one of them involves an alleged "taking" of property from a **debtor** pursuant to any subparagraph of section 522. Instead, all of the cases addressing section 522 in light of the Takings Clause concern whether certain changes to section 522 (or, in earlier cases, the enactment of section 522 as part of the 1978 Bankruptcy Code), which grant a debtor some additional right or exemption, result in an unconstitutional taking with respect to the interests of the debtor's **creditors**.[6] This is simply because creditors' rights in a debtor's property are not created by the Bankruptcy Code (unlike a debtor's exemption rights, which are), and changes to section 522 that favor a debtor over creditors may affect the creditors' present interests in the debtor's property.

**IV. Section 522(p) has no retroactive effect.**

    **A.**    *Section 522(p) applies to post-petition, not pre-petition rights.*

Many takings cases concern the retroactive application of a statute, under the principle

---

[6] *See, e.g., In re McDole (Keybank Nat'l Assoc. v. McDole)*, 2008 U.S. Dist. LEXIS 80531 (D. Wash. 2008); *In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008); *In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002); *In re Bartlett*, 168 B.R. 488 (Bankr. D.N.H. 1994); *United States v. Security Industrial Bank et al.*, 459 U.S. 70; 103 S. Ct. 407; 74 L. Ed. 2d 235 (1982). *See also Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589, 55 S. Ct. 854, 79 L. Ed. 1593 (1935) (finding Frazier-Lemke Act violated Takings Clause because the rights it conferred upon mortgagors destroyed property rights of mortgagees).

that the law should not upset legitimate expectations regarding property rights. *See, e.g., United States v. Security Industrial Bank et al., 459 U.S. 70, 81; 103 S. Ct. 407, 414; 74 L. Ed. 2d 235 (1982).*[7] Calling upon this general principle, the Debtor argues that the application of 522(p) would act retroactively in his personal circumstances, because 522(p) was not in effect when he purchased the Property. This argument misses two key points. First, section 541(a), not 522(p), divested the Debtor of his rights in the Property, and section 541(a) existed in 2004 (when the Property was purchased) as it exists today. The Debtor purchased the property subject to the effects of federal bankruptcy law, and the operation of section 541 to transfer the Property to his bankruptcy estate was the same on the Petition Date as it was on the date he purchased the Property.

Second, section 522(p) itself went into effect in 2005, prior to the inception of the Debtor's bankruptcy case. As discussed *supra*, 522(p) affects only federal bankruptcy exemption rights, not prepetition property rights. The Debtor's homestead exemption rights were determined not when he purchased the property, but rather on the Petition Date. *In re Williams*, 283 F.3d 686, 691-92 (5th Cir. 2002). Application of 522(p) to the Debtor's exemption rights is, therefore, not retroactive.[8]

**B.**     ***A purchaser of real property has no right to freeze the exemption status of the property with respect to a hypothetical future bankruptcy filing.***

No individual has a constitutional right to purchase property with the expectation that,

---

[7] It does not appear that Mr. Kim submits the argument of disfavored retroactivity as an independent basis for invalidating section 522(p), but rather as a factor to be considered in the takings analysis.

[8] From the standpoint of a constitutional takings analysis, 522(p)'s limit on the value of the homestead exemption defined by reference to state law in section 522(b)(3) is equivalent to a legislative reduction in the amount of the homestead defined by the so-called "federal" exemption scheme of 522(b)(2). Congress could reduce the present value at any time. Yet its effect would not be retroactive so long as it is not applied to reduce the available exemption amount for those debtors who filed bankruptcy prior to its effect date. Nor, for that matter, would a debtor suffer a "taking" by virtue of his disappointment in the reduction of the value of the federal homestead exemption as compared to what it may have been when he purchased his home.

were he to become a debtor in bankruptcy one day, the Bankruptcy Code will afford him the same exemptions with respect to that property as it would have had he filed for bankruptcy on the day of purchase.[9]

While Dome has encountered no reported cases concerning section 522(p) and the Takings Clause, a number of courts have considered the Takings Clause in the context of section 522(f). The reasoning in a series of cases involving legislative increases in state law homestead exemption limits, and the effect of such increases on creditors who hold non-purchase money liens on the property which pre-date the relevant legislation, is instructive. *See, e.g., In re Trudell*, 381 B.R. 441 (Bankr. W.D.N.Y. 2008); *In re Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002). Creditors in those cases argued that the legislature's act of increasing the state law homestead exemption limits retroactively diminished the value of their pre-existing liens. The courts have uniformly rejected this argument. The common rationale among these and similar cases holds that the lienholders took their liens subject to the state legislature's power to alter exemption limits – and hence the value of their liens – at any time. *See Trudell*, 381 B.R. 441 ("What the Legislature gave to holders of judgment liens, the Legislature may take away prior to sale or other satisfaction of the judgment lien."), and *Betz*, 273 B.R. 313 (Bankr. D. Mass. 2002) (lienholder knew or should have known that … *§ 522(f)* might impact upon [*sic*] his lien and that the underlying state court exemptions might be adjusted depending upon the date of the filing of the bankruptcy case.)

The *Betz* court explained that the subsequent reduction of the value of the creditors' lien

> "is not unjust, as every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors." *Leicht, 222 B.R. at 683-84*

---

[9] Theoretically, section 522(p) could be considered retroactive if Congress had drafted it so as to reduce the value of a 522(b)(3) homestead exemption for debtor whose petition date preceded the effective date of the statute.

>   (quoting *Hanover Nat'l Bank. v. Moyses, 186 U.S. 181, 189, 46 L. Ed.
>   1113, 22 S. Ct. 857 (1902)).* Accordingly, [the creditor's] property rights
>   under the [Takings Clause of the] *Fifth Amendment* are not infringed upon
>   by application of the increased homestead amount.

273 B.R. at 326-27.

Parallel reasoning applies here with respect to debtors rather than creditors: the purchaser of residential real property takes and enjoys a state law homestead exemption *subject to* applicable bankruptcy law, and his ability to assert some or all of that exemption in bankruptcy may be altered by Congress at any time.

> **C.**     ***Takings analysis of section 522(f): where legislation may in fact affect a creditor's prepetition interests in debtor property.***

Unlike this case, retroactive application of federal bankruptcy exemption laws was relevant to the analysis in *Security Industrial, 459 U.S. 70.* That case concerned the inclusion in the 1978 Bankruptcy Code of section 522(f)(2), which permits debtors to avoid non-possessory, non-purchase money liens on various types of exempt personalty. At issue was whether section 522(f)(2) could be applied to liens on the debtor's personalty which creditors had perfected prior to the effective date of the Code. The Court declined to squarely resolve the question of whether such application would constitute an unconstitutional taking, and instead observed that retroactive application of the provision would raise "substantial enough constitutional doubts..."

>   No bankruptcy law shall be construed to eliminate property rights
>   which existed before the law was enacted in the absence of an
>   explicit command from Congress. In light of this principle, the
>   legislative history of the 1978 Act suggests that Congress may not
>   have intended that *§ 522(f)* operate to destroy pre-enactment
>   property rights."

*Id. at 74. See also* Forrester, 51 FLA. L. REV. at 869-870.

As with *McDole, Trudell,* and *Betz* (all discussed *supra*), the essential distinction between *Security Industrial* and the present case is the difference between the property interests of

creditors – which may be adversely affected by section 522, and debtors – whose interests in

property are only increased by section 522. Whereas retroactive application of section 522(f)(2)

to liens which pre-dated the Bankruptcy Code may have affected a pre-petition property rights of

the lienholders, 522(p) does not affect a property right (as already discussed herein).

> **D.      *Application of section 522(p) in this case is prospective, not retroactive.***

The discussion in *McAndrews v. Fleet Bank,* 989 F.2d 13 (1st Cir. 1993), helps to clarify

why application of section 522(p) in this case is not retroactive with respect to the purchase of

the Property, notwithstanding the fact that the Debtor's purchase of the Property pre-dates

BAPCPA.

> The determination of whether a statute's application in a particular
> situation is prospective or retroactive depends upon whether the conduct
> that allegedly triggers the statute's application occurs before or after the
> law's effective date. Hence, a statute's application is usually deemed
> prospective when it implicates conduct occurring on or after the effective
> date. See *Cox v. Hart, 260 U.S. 427, 434-35, 43 S. Ct. 154, 156-57, 67 L.
> Ed. 332 (1922)*; *EPA v. New Orleans Pub. Serv., Inc., 826 F.2d 361, 365
> (5th Cir. 1987)*; see also *Allied Corp. v. Acme Solvents Reclaiming, Inc.,
> 691 F. Supp. 1100, 1110 (N.D. Ill. 1988)*; *King v. Mordowanec, 46 F.R.D.
> 474, 482 (D.R.I. 1969)*. Even when the later-occurring circumstance
> depends upon the existence of a prior fact, that interdependence, without
> more, will not transform an otherwise prospective application into a
> retroactive one.
>
> * * *
>
> This means, of course, that a statute may modify the legal effect of a
> present status or alter a preexisting relationship without running up against
> the retroactivity hurdle. The key lies in how the law interacts with the
> facts. So long as a neoteric law determines status solely for the purpose of
> future matters, its application is deemed prospective. See *New Orleans
> Pub. Serv., 826 F.2d at 365.*

989 F.2d at 16 (quoted in *In re Bartlett*, 168 B.R. 488, 495 (Bankr. D. N.H. 1994)).

In short, determination of whether application of a statute is prospective or retroactive

turns on the date of the conduct that triggers the application of the statute. In the *McAndrews*

case, the court found that application of FIRREA to a lease which pre-dated the enactment of

FIRREA was not retroactive. The effective date the lease was not the triggering event; rather, conduct by the landlord and the insolvency of the tenant (among other circumstances) subsequent to FIRREA's enactment triggered FIRREA. *Id.* In the case now before this Court, the event triggering application of 522(p) was the filing of the bankruptcy petition, not the purchase of the Property. This is because exemption rights are determined as of the time of the filing of the bankruptcy petition. *See In re John Taylor Co., 935 F.2d 75 (5th Cir. 1991); 11 U.S.C. § 522(b)(3)(A) (1994) and 11 U.S.C. § 522(b)(3)(A) (2005).* Accordingly, application of section 522(p) is prospective.

> **E.**     ***Section 522(p) does not violate the general presumption against retroactivity.***

Even assuming, for the sake of argument, a retroactive effect of section 522(p), the statute does not violate any presumption against retroactivity. With respect to a debtor-to-be's purchase of residential property, section 522(p) merely "alter[s] the future legal effect of past transactions. *Landgraf v. USI Film Products, et al.*, *511 U.S. 244, 293; 114 S. Ct. 1483; 128 L. Ed. 2d 229, 270 (1994)* (Scalia, J., concurring opinion). Justice Scalia explains,

> A focus on the relevant retroactivity event also explains why the presumption against retroactivity is not violated by interpreting a statute to alter the future legal effect of past transactions – so-called secondary retroactivity, see *Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 219-220, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988)* (SCALIA, J., concurring) (citing McNulty, *Corporations and the Intertemporal Conflict of Laws*, 55 Calif. L. Rev. 12, 58-60 (1967)); cf. *Cox v. Hart, 260 U.S. 427, 435, 67 L. Ed. 332, 43 S. Ct. 154 (1922).* A new ban on gambling applies to existing casinos and casinos under construction … even though it "attaches a new disability" to those past investments. The relevant retroactivity event is the primary activity of gambling, not the primary activity of constructing casinos.

*Id.* As with the law prohibiting gambling, section 522(p) alters the future legal effect of the real estate purchase. The "relevant retroactivity event" with respect to the operation of section 522(p) is the primary act of a bankruptcy filing (akin to Scalia's primary activity of gambling), not the primary activity of purchasing a home purchase (akin to constructing casinos).

## CONCLUSION

Mrs. Kim's interest in the Property is her community interest in the Debtor's exemption with respect to Property. The Debtor's exemption is limited, by section 522(p), to a monetary interest in the value of the Property. The Bankruptcy Code does not afford Mrs. Kim a separate exemption right, nor any distinct compensable economic or possessory right, in the Property. To the contrary, the Property remains property of the estate, subject to all the powers of a trustee under the Bankruptcy Code, including sale. Mrs. Kim retains her community interest (as defined by state law) in the Debtor's exemption with respect to the Property (as previously determined by the Exemption Order).

Regarding the Mr. Kim's Debtor's argument concerning the Takings Clause, Bankruptcy Code section 522(p) imposes no public burden upon a debtor, it takes no property away from a debtor, and it has no retroactive effect. It therefore does not violate the Takings Clause, nor does it even present a takings issue.

## PRAYER

Dome prays that the Court affirm the Bankruptcy Court's Memorandum Opinion and Order to the extent it grants Dome's motion for summary judgment, and reverse and render judgment in favor of Dome regarding the effect of section 544(a) on any alleged separate property interest of Mrs. Kim in the Property.

Respectfully submitted,

SPECTOR & JOHNSON, PLLC

 /s/ Nathan M. Johnson

24

Howard Marc Spector
TBA # 00785023
Nathan M. Johnson
TBA # 00787779
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
(214) 237-3380 (fax)

ATTORNEYS FOR DOME ENTERTAINMENT
CENTER, INC.

## CERTIFICATE OF SERVICE

I certify that on April 12, 2010 a copy of the foregoing pleading was served via electronic

means to all parties who receive ECF notice in this case.

Charles L. Perry
Monica S. Blacker
Andrews Kurth, LLP
1717 Main St., Ste. 3700
Dallas, Texas 75201
Tel: (214) 659-4681

Gerrit M. Pronske
Rakhee V. Patel
Christina W. Stephenson
Pronske & Patel, P.C.
2200 Ross Ave., Ste. 5350
Dallas, Texas 75201

    /s/  Nathan M. Johnson
Nathan M. Johnson